286 So.2d 80

**Willard Joseph MARTIN, alias**

v.

**STATE.**

**8 Div. 352.**

Court of Criminal Appeals of Alabama.

Nov. 13, 1973.

Tompkins & Tompkins, Tuscumbia, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Jonathan Prince Gardberg, Sp. Asst. Atty. Gen., Mobile, for the State.

HARRIS, Judge.

Appellant was convicted of robbery and his punishment fixed at imprisonment in the penitentiary for a term of twenty-five (25) years. At arraignment, attended by counsel, he interposed a plea of not guilty.

On January 27, 1972, David Briscoe, an officer with the Courtland Police Department, was on a patrol duty in his well-marked police car on Alabama Highway 20 at or near the intersection of Highway 29, in the city limits of Courtland in Lawrence County. He observed a 1961 white Ford automobile occupied by two men driving at an excessive rate of speed. He chased the speeding car and stopped it. The driver of the Ford got out, walked back to the officer and asked what they had done. The officer told him that he was speeding and asked to see his driver's license. He said he didn't have a driver's license and to let them pay a fine. He showed the officer two tag receipts showing the car was purchased in Huntsville in the name of Harry Nelson, address: Route 1, Sheffield, Alabama. The officer took the tag number and radioed the State Trooper Office in Decatur to check out the tag and ascertain if the Ford was a stolen automobile. It was checked out and found not to be stolen.

The officer walked to the Ford to check the identification of the passenger who exhibited a driver's license issued by the State of Louisiana in the name of Ray Ramos. Ramos said he lived in Louisiana. The officer decided to check the car for weapons. He went around the car to the driver's side and opened the back door. He saw a coat on the back seat with a brief case on top. He pulled the coat out and the brief case fell and he saw a .22 rifle on the seat with a telescope on it. At this moment, the passenger slipped up behind the officer, jerked his pistol out of his holster and pointed an automatic pistol at the officer's head. He stuck the officer's pistol in his belt and with his own automatic, forced the officer to get in the driver's seat of the police car and follow the Ford automobile. The Ford started east toward Decatur and after traveling a few miles, turned off the main highway and drove to the front of a vacant house. During the entire trip the man in the police car kept the automatic pistol pointed on the officer. When the officer stopped behind the Ford he was forced out of the police car and with the pistol in his back he was marched behind the police car to the rear of the deserted house. Just before beginning the trip from Courtland, the two-way police radio and wiring were torn loose and the microphone dropped on the floorboard of the cruiser. The patrol car was driven as close to the rear of the vacant house as possible. The driver of the Ford tried to raise the hood of the officer's car but was unsuccessful. He then reached under the dash and snatched all wiring out and disabled the car. The man with the automatic pistol took the officer's handcuffs and handcuffed his left arm to the outside handle of the car door. The driver of the Ford then took two one-dollar bills from the officer's back pocket and a case pocket knife from his front pocket. He told his companion with the pistol to shoot or kill the officer as he stood handcuffed to the car. The man with the pistol said they didn't have time and they got in the Ford and left the place. The officer got his night stick and pried the door handle off the car and freed himself.

In the subsequent investigation of this robbery, it developed that both robbers gave the police officer fictitious names. Harry Nelson's true name was Willard Joseph Martin, with a string of aliases, and Ray Ramos' true name was Louis Ricarte,

with an alias. At the time of this offense both were escapees from the Federal penitentiary in Atlanta, Georgia.

Lieutenant R. P. Sorrells, Criminal Investigator of the Department of Public Safety, Investigating and Identification Division, and the FBI entered the case. On April 14, 1972, Lt. Sorrells carried sixteen (16) photographs to Courtland and placed them on a desk before Officer David Briscoe and requested that he look over the display and see if he recognized anyone in the photographs. These photographs did not have any names on them, nor did they have any numbers or any other kind of identification. Officer Briscoe carefully viewed all photographs. He picked up only two (2) photographs and identified them as the two men who had robbed him. Without the slightest hestitation or equivocation, he told Lt. Sorrells that the two men in the photographs he had handed him were the robbers. Briscoe picked out appellant first and then Ricarte.

The police officer described appellant as having short grey hair and as being clean shaven. He had on grey pants, a checkered shirt and a light coat. He weighed around 185 pounds and was five feet ten or eleven inches. Ricarte was wearing dark pants and a solid light-colored shirt. He, too, was clean shaven.

Several months later, Briscoe was watching television tuned to one of the Huntsville stations when he heard an announcement that the two men who robbed a Courtland police officer had been apprehended. A photograph of appellant flashed on the screen for a few seconds. Briscoe did not recognize the picture as being one of the men who had robbed him. The photograph on the screen showed the man to have very dark hair (wig), long sideburns and a thick black mustache.

Appellant's wife testified in his behalf and sought to establish an alibi. She said she and her husband were living in the State of Mississippi at the time of the alleged robbery and had not been to Alabama. They moved to Huntsville and were living there when he was arrested in May, 1972, several months after the robbery. She further testified that before Christmas of 1971, her husband started growing a black mustache, a black beard and wore a black wig. His natural hair was white or grey. She dyed his hair with Clairol black hair oil. He shaved his beard in May and at the time of trial, the hair dye had faded and the grey roots were beginning to show. The tendency of her testimony, in addition to the alibi evidence, was to show that on January 27, 1972, her husband wore a black wig, a black mustache and, a black beard, and that this was a case of mistaken identity when police officer Briscoe described appellant as having grey hair and as being clean shaven.

Appellant's co-indictee, Louis Ricarte, voluntarily took the stand for the purpose of giving testimony in behalf of appellant. The court carefully spelled out Ricarte's rights under the laws and Constitution of Alabama, and the Constitution of the United States against compulsory self-incrimination. He asked Ricarte if he had discussed this matter with his attorney, Honorable W. H. Rogers, and he answered affirmatively, stating, "I wish to testify." Mr. Rogers was present in court and said:

"Your Honor, I am W. H. Rogers, his attorney, and it depends upon the questions asked him whether he is going to testify. And if they are self-incriminating, why of course I would object to any self-incriminating questions."

From the record:

"By Mr. James Tompkins:

"Q. Will you state your name, please?

"A. Louis Ricarte, Jr.

"Q. And you are now in the Lawrence County jail; is that correct?

"A. Yes sir.

"Q. Have you ever seen me before today?

"A.  No sir.

"Q.  Before just a few minutes ago?

"A.  That's right.

"Q.  I will ask you if you were present at or near Courtland, Alabama, on or about January 27th, 1972, at which time allegedly a gun or pistol was taken from the police officer, Mr. David Briscoe; were you present on that occasion?

"A.  Yes sir.

"Q.  Was the defendant here, Mr. Martin, present on that occasion?

"A.  No, sir.

"Q.  Was someone else with you on that occasion?

"A.  Yes, sir.

"Q.  Did you take a gun from the officer, David Briscoe?"

Mr. Rogers objected to this question on the ground that it violated his client's privilege against self-incrimination, and instructed him not to answer the question. The witness declined to answer all pertinent questions thereafter on the advice of his attorney or on the ground that it might tend to incriminate him.

Finally, after considerable colloquy, the trial court said that he was going to let Mr. Ricarte leave the witness stand, that he didn't think he was competent to testify, and that he was going to instruct the jury to exclude all the testimony that he had given.

After both the state and appellant had rested, the court permitted the state, over appellant's objection, to re-open the case and put on a witness. This witness testified that on January 13, 1972, he sold a 1961 white Ford, four-door automobile to appellant, who stated he was Harry Nelson. He gave him a bill of sale and purchased a car tag as part of the purchase price and transferred it to Colbert County. He made an in-court identification of appellant as the man who bought the car

from him. He testified that at the time he made the sale, appellant had grey hair and it was short and he did not have a beard or sideburns.

Just before the trial began, appellant's counsel moved the court not to allow appellant to be brought into the courtroom manacled. The court overruled the motion and an exception was noted. While the record is not too clear, it is indicated that appellant remained handcuffed throughout the trial and Mr. Ricarte was in handcuffs during the time he was on the witness stand.

■ Robbery is the felonious and forcible taking of the property of another from his person, or in his presence, against his will, by violence or by putting him in fear. It is essential to a conviction of robbery "that the taking should, at the time of manucaption, have been with a larcenous intent." Kennedy v. State, 208 Ala. 66, 93 So. 822.

■ From the moment Ricarte snatched the police officer's pistol from his holster and forced him at gun point to follow the car driven by appellant to the vacant house, the question of intent to commit robbery made a submissible issue for determination by the jury. The subsequent taking of two one-dollar bills and the case knife from the person of the officer was one continuous occurrence and everything that was done was admissible as of the res gestae. Root et al. v. State, 32 Ala.App. 253, 25 So.2d 180; Lambert v. State, 48 Ala.App. 600, 266 So.2d 812; Jackson v. State, 229 Ala. 48, 155 So. 581.

■ A prisoner undergoing trial should not be in irons, shackled, manacled, or otherwise fettered unless the situation creates a reasonable belief that such restraint is necessary to prevent his escape or rescue. This principle is deeply rooted in the ancient common law and was noted by Sir William Blackstone, 4th Com. 322, where he said, "The prisoner must be brought to the bar without irons, or any manner of

shackles or bonds, unless there be evident danger of escape, and then he may be secured with irons."

■ Appellant was both a Federal and state prisoner at his trial. He had escaped from the Federal prison in Atlanta, Georgia. He was on trial for robbery, a serious felony under the laws of this state. While the police officer stood handcuffed to the door of his patrol car, appellant instructed his companion in crime to shoot or kill him. His companion refused only because they did not have that much time to waste. Viewed in the light of all the circumstances, we cannot say that the trial judge abused the sound discretion reposed in him to have appellant so restrained during his trial. Faire v. State, 58 Ala. 74; Smith v. State, 247 Ala. 354, 24 So.2d 546.

In Clark v. State, 280 Ala. 493, 195 So. 2d 786, Mr. Justice Merrill, writing for our Supreme Court said:

"Under our Federal and State Constitutions, a very basic concept of fair trial requires that the defendant be presumed innocent, and that presumption abides with him from the very beginning of his trial to its conclusion, until overcome by the State, which must prove him guilty beyond a reasonable doubt. All of the authorities we have studied are agreed that to bring a prisoner before the bar of justice in handcuffs or shackles, where there is no pretense of necessity, is inconsistent with our notion of a fair trial, for it creates in the minds of the jury a prejudice which will likely deter them from deciding the prisoner's fate impartially. But, where, as here, the accused has attempted an escape during the course of his trial, the authorities are likewise agreed that it is within the trial judge's discretion to have handcuffs or shackles applied when it is manifest that such precaution is necessary to prevent violence or escape."

We do not interpret the *Clark* case, supra, as holding that before a prisoner can

be handcuffed or otherwise shackled during trial, he must first have attempted to escape from the courtroom or committed an overt hostile act against the court or officers in attendance upon the trial. To have awaited such attempts or demonstrations might have been too late. Apparently the trial court felt that he was presiding over the trial of a desperado and that the better part of wisdom dictated that preventive measures were in order. He was there—we were not, and we do not think that the "sound and enlightened discretion" vested in him should be disturbed by this court.

■ Appellant contends that the trial court committed reversible error in commenting upon the credibility of his witness and co-indictee, Louis Ricarte. After this witness repeatedly invoked his Fifth Amendment rights, the court said that he did not think he was competent to testify in this case and that he was going to exclude his testimony from the jury. This statement was made to the lawyers involved in the trial and not to the jury. The court did not charge out the testimony of Ricarte and it went to the jury for whatever consideration they wanted to accord it. The question of the credibility of this witness was not drawn into question by the court. Moreover, the record does not affirmatively show that the remark of the court was made in the hearing of the jury. Nichols v. State, 267 Ala. 217, 100 So.2d 750.

■ It is within the sound discretion of the trial court to allow evidence in rebuttal although such testimony could have been offered on the trial in chief. Hence, there was not error in allowing the state to call a witness to testify with reference to the sale of an automobile to the appellant. Emerson v. State, 281 Ala. 29, 198 So.2d 613.

Affirmed.

All the Judges concur.