The appellant was indicted by a grand jury of Montgomery County for the offense of the robbery of a 1972 Ford Pinto automobile, the property of Marcie Burkey. A jury found the appellant guilty and fixed her punishment at ten years in the penitentiary. Judgment and sentence by the trial court were entered accordingly. Appellant's retained trial counsel has been appointed to represent her on this appeal.
The victim in this case was Mrs. Marcie Burkey. She had been having mechanical *Page 220 
difficulties with her automobile and on the afternoon of March 6, 1976, she was headed to a service station on the Eastern Boulevard in Montgomery, Alabama, where the car had previously been repaired and serviced. Taking the I-85 route to the Eastern Boulevard, Mrs. Burkey was on the downtown entrance to I-85 when she was stopped by a red light near Arba and Decatur Streets.
While stopped at the light she heard someone shout at her. She looked and saw the appellant, a large black woman, and a small black male, later identified as Potee Frazier. Frazier said, "Hey baby, could you give me and my mama a ride?" Mrs. Burkey responded, "No, my car's breaking down", and stated that she was trying to get to a service station.
The appellant then came around to the front of the car talking to Mrs. Burkey while Frazier came around the rear of the car, opened the door and slipped in the back seat. As Frazier did this, the appellant got into the front passenger seat and closed the door. Mrs. Burkey insisted that she could not give them a ride but the light changed and caught in the flow of five o'clock traffic, Mrs. Burkey entered I-85 on the entrance ramp toward the Eastern Boulevard and Atlanta, Georgia.
As the car pulled on the interstate, one of her uninvited passengers asked her if she ever picked up hitchhikers. Mrs. Burkey replied that she never had done it before and did not want to do it this time. Frazier told her that it was a mistake and that this would be the last time she ever did so.
Mrs. Burkey heard Frazier going through her purse and became afraid because she knew she was being robbed. While this was going on, the appellant continued to stare at Mrs. Burkey in a "cold and heartless manner".
Mrs. Burkey pulled off I-85 just past the Perry Hill Road exit ramp, Frazier having indicated to her that they would get out there. When she stopped, Frazier placed a four barrel derringer against her side and told Mrs. Burkey to do exactly as she was told and that it a matter of life or death to go along with them. Frazier showed her that his pistol was loaded.
Frazier then got out of the car, signaled and two black men approached. Mrs. Burkey was made to get in middle of the back seat and Frazier asked the appellant to drive.
As the appellant began driving, Mrs. Burkey became hysterical and pleaded with her captors to be released. She told them that they could have the car if they would just let her go. They responded that she must think them fools to think that they would let her go because they knew she would report them. Frazier finally told Mrs. Burkey that they would release her when they arrived in Atlanta.
As the group continued on toward Atlanta, it became apparent that Frazier was the leader of the group. Frazier told Burkey that they were members of a civil rights group and that "they really believed in following Martin Luther King but that sometimes that you have to use terrorism sometimes to get the effect you wanted . . . They spoke about the KKK and that they had to get back at the white people who had prosecuted the coloreds". They also discussed Patty Hearst and terroristic tactics. While Frazier did most of the talking, the other members of the group, including the appellant nodded in agreement with him.
At the Wire Road exit on I-85 the appellant stopped the car under an overpass. Frazier and the appellant relieved themselves. When the appellant attempted to start the car, it would not start. Frazier and another man went to find a service station for assistance and returned but were unsuccessful in getting the car started.
Frazier left again to find another service station. Mrs. Burkey was then left alone with the appellant and another black male who, as Frazier had instructed, walked down the road to try to stop a bigger car.
Mrs. Burkey, alone with the appellant, pleaded with her and tried to play upon her *Page 221 
sympathy. She asked the appellant if what Frazier had said about letting her go in Atlanta were true. After a pause, the appellant told Mrs. Burkey that it was not true, "but what would happen to me in Atlanta would be good for me". Then as Mrs. Burkey, still in the back seat of her car, looked out the window, the appellant, who was sitting in the front seat told her that "if I had any idea of escaping I might as well forget it because they all had guns and that she wouldn't think twice about killing me if she had to".
Frazier and the man that went with him returned with Patrick Parsons who worked at the Torch 85 Truckstop on I-85 near Auburn. Parsons tried to fix the car but couldn't. He suggested that they call a tow truck but found that nobody in the group wanted him to move the car. Although he tried to talk to Mrs. Burkey, the members of the group just sort of wedged in and would not let him talk to her or call a tow truck. The group discussed the possibility of him taking them to Atlanta. After this was discussed a fireman from Auburn, James Collier, stopped to see if he could help.
Frazier asked Collier if he would take them someplace where they could buy some beer. Collier agreed, took Frazier and the appellant to get some beer, gave them a dollar to buy a six-pack with, and returned to the stalled automobile.
Mrs. Burkey testified that when Collier arrived the group greeted him on what appeared to be a friendly basis and engaged in friendly conversation. Frazier told her that they were going to split up and that some of them were going to Atlanta with Collier and some with Parsons, and that she was to follow instructions or be killed.
When the appellant returned from getting the beer Mrs. Burkey asked her if it was true about Parsons and Collier being part of the group. The appellant told her that they were all friends. Frazier then told her that they were going to leave her with Collier. He again reminded her that Collier was a member of the group and that he was going to stay and make sure that she did not go to the authorities. Frazier also told her that if she did go to the authorities, they had friends who would take care of her.
Frazier, the appellant and their two companions left with Parsons. After they had gone, Mrs. Burkey asked Collier who he was. When he told her she became hysterical. Collier then took her to the police department and Mrs. Burkey reported what had happened.
In the meantime, Parsons took the appellant and her three cohorts to his home and fed them dinner. After leaving his home, headed for Atlanta, Parsons was stopped by a police roadblock. Although Frazier told him to go around it, Parsons stopped instead. The police then arrested the entire group including Parsons.
Mrs. Burkey testified that she never tried to escape because there was someone with her at all times and she never got a chance. Although Mrs. Burkey did not remember what the group said about keeping the car, she testified that none of them indicated to her that they had no intentions of keeping the car.
 I
The appellant's first assignment of error is that the trial court erred in denying her motion for a mistrial. This motion was based on the fact that during the lunch recess, one of the petit jurors asked one of the prosecuting attorneys if he could inspect the pistol allegedly used in the commission of the crime. Although the pistol had not been formally admitted into evidence, it had been identified by the victim when this incident occurred. This conversation or request was not made in the presence of the trial judge and defense counsel stated that he only overheard a part of it.
Counsel for the state is not accused of any wrong doing. However the appellant contends that the mere failure of the trial juror to adhere to the court's strict rules prohibiting discussion of the case with other parties constitutes ground for granting a mistrial. *Page 222 
The test of vitiating influence in such cases as this is set forth in Roan v. State, 225 Ala. 428, 143 So. 454 (1932). This test is not that it actually did influence a member of the jury to act without the evidence, but that the unauthorized communication might have unlawfully influenced the juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered. Roan, 225 Ala. 435,143 So. 454; Oliver v. State, 232 Ala. 5, 166 So. 615 (1936); Lawley v.State, 264 Ala. 283, 87 So.2d 433 (1956).
While counsel for either side should refrain from conversation of any sort with jurors during the trial of a cause, the mere fact that some conversation is had, without more, does not constitute ground for mistrial. The facts and circumstances in each case will have to be considered individually and much will remain in the discretion of the trial judge. Thus, where the trial court investigates the circumstances under which the remark was made, its substance, and determines that the rights of the appellant were not prejudiced by the remark, reversible error will not be found absent a clear showing of an abuse of that discretion. Waldorfv. State, 24 Ala. App. 152, 132 So. 63 (1931); Hawkins v. State,267 Ala. 518, 103 So.2d 158 (1958); Hutchens v. State,45 Ala. App. 507, 232 So.2d 687, cert. denied, 285 Ala. 755,232 So.2d 700 (1970); Simpson v. State, 38 Ala. App. 219,81 So.2d 893 (1955).
This court can neither envision nor imagine any prejudice which could possibly have resulted from the request of a juror who was an admitted gun enthusiast, to inspect the four barrel derringer connected with the charged crime. The fact that this pistol was subsequently admitted into evidence removes this issue from question. Alabama Rules of Appellate Procedure, Rule 45.
 II
The appellant urges that the trial court committed reversible error in failing to give the following requested charge:
 "The Court charges the jury that to constitute the intent required for the offense of robbery the State of Alabama must show that the defendant took the property of the alleged victim and carried it away with the intent of steal (sic) said property."
This charge was properly refused for a number of reasons, the most obvious one being that the charge contains a word, "steal", that is either misspelled or has not been placed in the proper grammatical tense.
Written instructions must be given and refused in the terms in which they are tendered. Title 7, § 273, Code of Alabama 1940. For this reason, where the requested charge contains a misspelled word the charge is properly refused, Darby v. State,48 Ala. App. 421, 265 So.2d 449 (1972) ("proff" for "proof"); or a verbal inaccuracy, Reeder v. State, 210 Ala. 114, 97 So. 73
(1923) ("convincing" for "conviction"). See also Harwell v.State, 12 Ala. App. 265, 68 So. 500, cert. denied, State v.Harwell, 192 Ala. 689, 68 So. 1019 (1915) ("never" for "ever");Herring v. State, 14 Ala. App. 93, 71 So. 974 (1916) ("segregatery" for "segregately"). Where misused words appear in the requested instructions, even though due to the fault of a typist, this court is not authorized to base error on their refusal. Carroll v. State, 36 Ala. App. 59, 52 So.2d 171 (1951).
Additionally, this requested charge was covered in the oral and given requested charges of the trial court and for that reason its refusal does not constitute error. 6A Alabama Digest, Criminal Law, 829.
And finally, the requested charge, in the facts of this case, is incomplete and misleading as it does not include the "taking of control" of the automobile as synonymous with the taking and carrying away of the property as one of the elements of robbery. Root v. State, 32 Ala. App. 253, 25 So.2d 180, cert. denied, 247 Ala. 514, 25 So.2d 182 (1946). For the reason that it was misleading, the requested charge was properly refused. 6A Alabama Digest, Criminal Law, 830. *Page 223 
 III
The appellant contends that the trial court's denial of her motion to exclude the state's evidence was reversible error. It is asserted that the evidence showed that the appellant and the other riders had taken the victim's automobile merely for use in making a trip to Atlanta and that therefore no conviction for robbery is legally proper because there was no felonious intent to deprive the owner of her automobile.
From the moment the appellant and her accomplice climbed in the victim's car over protest and subsequently placed the gun against her ribs and forced her to do what she was told under threat of death, the question of intent to rob became a submissible issue for determination by the jury. Martin v.State, 51 Ala. App. 405, 286 So.2d 80 (1973); Lambert v. State,48 Ala. App. 600, 266 So.2d 812 (1972).
No case has more clearly spoken to this issue than the case of Root v. State, 32 Ala. App. 253, 25 So.2d 180, cert. denied,247 Ala. 514, 25 So.2d 182 (1946).
 "It is our opinion that the possessive or manucaptive element essential in robbery was present in this case. From the moment that these defendants and Lewis entered his automobile these appellants only were in full control and possession thereof. True, Lewis was present at all times. However, his status was that of a robot. His dominion over the automobile was completely negatived by the will and pistols of the appellants. It is our opinion that the facts of this case spell out what on the part of the appellants there was a felonious taking of property from the person of another, or in his presence, against his will, by violence or putting in fear. The fact that the owner was carried along against his will when the property was taken is incidental and should not affect the decision."
Root, 32 Ala. App. 255, 25 So.2d 182.
See also Gibson v. State, 49 Ala. App. 18, 268 So.2d 49 (1972) and cases cited therein at 49 Ala. App. 20, 268 So.2d 49.
From the evidence presented by the state, the jury could infer that the appellant was a willing and active participant in the crime. It is immaterial that she was not the "leader" of the group. Gibson, supra; Parsons v. State, 33 Ala. App. 309,33 So.2d 164 (1948); Title 14, § 14, Code of Alabama 1940. For this reason the trial court properly refused the affirmative charge requested by the appellant.
 IV
Lastly, the appellant argues that the action of the state in striking all the blacks (four) off the jury violated the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. The appellant recognizes the principle that a black defendant is not entitled to a jury containing members of his race.
The issue raised by the appellant has been answered by the United States Supreme Court in the case of Swain v. Alabama,380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In the quest for an impartial and qualified jury, black and white alike are subject to being challenged without cause and the striking of blacks in a particular case does not constitute a denial of equal protection of the law. The preemptory striking of the names of the blacks on the petit jury venire by the district attorney is not error. Thigpen v. State, 49 Ala. App. 233,270 So.2d 666 (1972); Seals v. State, 282 Ala. 586, 213 So.2d 645
(1968).
Having reviewed the entire record as required by law and finding no error prejudicial to the substantial rights of the appellant, we are of the opinion that this case is due to be and is hereby
AFFIRMED.
All Judges concur. *Page 224