This is a case of first impression in Alabama involving a criminal prosecution for the alleged attempted transmission of the Acquired Immune Deficiency Syndrome (AIDS).
Adam Brock was charged in a three-count indictment with one count of attempted murder, in violation of Ala. Code 1975, §§13A-4-2 and 13A-6-2, and with two counts of assault in the second degree, in violation of § 13A-6-21. The jury found the defendant guilty of first degree assault on count one, second degree assault on count two, and third degree assault on count three. The trial judge sentenced the defendant to 15 years' imprisonment for first degree assault; to 10 years' for second degree assault, and, to a concurrent sentence of one year in the county jail for third degree assault. Four issues are raised on this appeal from those convictions.
The defendant was a prisoner confined to the "AIDS Unit" of the Limestone Correctional Facility. On October 6, 1987, the prisoners confined in the general population were "locked down" for purposes of exercising those inmates not members of the general prison population. During this time the prisoners started a commotion. Correctional officer Sam Mitchell was on duty and went to the defendant's cell because the defendant was acting belligerent, screaming and cursing. Officer Mitchell testified that after he entered the cell, the defendant attacked him and struck him several times with a padlock. The two men struggled. Officer Bettina Carter came to officer Mitchell's assistance and was struck by the padlock. The defendant's actions against officers Mitchell and Carter form the basis for counts two and three of the indictment.
Three months later during a routine shakedown for contraband by prison officials, officer Jim Gates and the defendant engaged in a scuffle. The altercation was a result of the seizure of two prohibited ink pens from the defendant's cell. After the defendant was handcuffed, he bit the officer on the arm. The injury was treated at the health care unit, where officer Gates received antibiotics. After the injury, officer Gates had three blood tests to detect the presence of the AIDS virus. All three tests were negative. The defendant's biting of officer Gates forms the basis of count one of the indictment.
 I
Count one of the indictment charged that the defendant "did, with the intent to commit the crime of murder . . ., attempt to commit said offense by biting Correctional Officer Jim Gates and breaking the skin, the said . . . [defendant] being infected with A.I.D.S. virus and being aware that the *Page 287 
A.I.D.S. virus is transmittal [sic] through bodily fluids secreted through his mouth. . . ." The jury found the defendant guilty of first degree assault as a lesser included offense of attempted murder. The defendant alleges that the trial court erred in denying his motion for a directed verdict or judgment of acquittal. He contends that the state failed to present a prima facie case of assault in the first degree. We agree.
The statute provides that "[a] person commits the crime of assault in the first degree if: (1) with intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument." Ala. Code 1975, § 13A-6-20(a)(1). The state argues that because the defendant had the AIDS virus, the defendant's use of his mouth to bite officer Gates met the requirements of use of a deadly weapon or a dangerous instrument causing serious physical injury.
A "deadly weapon" is "[a] firearm or anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury." Ala. Code 1975, § 13A-1-2(11). A "dangerous instrument" is "[a]ny instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury." Section13A-1-2(12). "Serious physical injury" is "[p]hysical injury [impairment of physical condition or substantial pain] which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." Section 13A-1-2(9).
The general rule for the inclusion of body parts, other than feet, as deadly or dangerous weapons is found in Annot. 8 A.L.R. 4th 1268, 1269 (1981):
 "The inclusion of human body parts, such as fists and teeth, within the class of deadly weapons provokes several conceptual problems. Most obviously, unlike other kinds of weapons, fists and teeth are not external instrumentalities. However, like many other criminal instrumentalities, they may be used to cause death or serious physical injury. This quality has led some courts to classify their use, under some circumstances, as use of a deadly weapon, although the main line of authority discussed infra is to the effect that in no circumstances can fists or teeth be dangerous weapons within the meaning of applicable statutes."
Alabama follows the view that fists may constitute deadly weapons or dangerous instruments, depending upon the circumstances and manner of their use. Hollis v. State,417 So.2d 617, 619 (Ala.Cr.App. 1982) (fists); Stewart v. State,405 So.2d 402, 405 (Ala.Cr.App. 1981) (fists). Here, the state failed to prove that the defendant used his mouth and teeth under circumstances "highly capable of causing death or serious physical injury," § 13A-1-2(12).
Viewing the evidence in the light most favorable to the state, we find that the prosecution's evidence shows that the defendant was confined in the "H.I.V. unit" of the prison. The defendant was told that he had "tested positive on the western block which means they are infectious to other people." Katherine Mullins, a registered nurse at the Limestone Correctional Facility testified that, to the best of her knowledge, the defendant was given the standard orientation on his health care. She stated that that included instructions "not to engage in sexual activity and not to share shaving or oral hygiene utensils." The trial judge sustained defense counsel's objection that nurse Mullins was not qualified to state why these precautions were necessary or required.
On cross-examination, nurse Mullins testified that all the inmates at the Limestone Correctional Facility were told not to share toothbrushes. The state presented absolutely no evidence as to the nature of AIDS or the manner in which it can be transmitted.
This court can take judicial notice that AIDS is a life-threatening disease and that contraction of the human immunodeficiency virus (HIV) constitutes a serious *Page 288 
physical injury within the definition of § 13A-1-2(9). However, this court can not take judicial notice that biting is a means capable of spreading AIDS. While AIDS may very well be transmitted through a human bite, there was no evidence to that effect at trial and we do not believe that is an established scientific fact. Although biting is of "particular concern," "evidence for the role of saliva in the transmission of virus is unclear." Guidelines for Prevention of Transmission of HumanImmunodeficiency Virus and Hepatitis B Virus to Health-Care andPublic-Safety Workers, pp. 9, 15 (U.S. Department of Health and Human Services, February 1989).
"Judicial notice will not be taken of matters of this kind which are not matters of common knowledge." Clark v. State,257 Ala. 95, 96, 57 So.2d 384 (1952). "[I]t is also fundamental that: 'In order that a matter may properly be a subject of judicial notice it must be "known" — that is, well established and authoritatively settled. It is clear that uncertainty or difference of belief in respect to the matter in question, will operate to preclude judicial notice thereof." Nolen v. State,35 Ala. App. 249, 252, 45 So.2d 786, cert. denied, 253 Ala. 565,45 So.2d 792 (1950).
It is also important to observe that there was absolutely no evidence that the bite caused serious physical injury or that the biting in this case had the capacity to result in serious physical injury. Additionally, we note that the state failed to prove that the defendant intended to cause serious physical injury when he bit officer Mitchell. See D. Robinson, Jr.,AIDS and the Criminal Law: Traditional Approaches and a NewStatutory Proposal, 14 Hofstra L.Rev. 91 (1985). The state simply failed to produce any evidence that the defendant was aware, or had been informed, that AIDS could be transmitted through a human bite.
This case should be compared with United States v. Moore,669 F. Supp. 289 (D.Minn. 1987), affirmed, 846 F.2d 1163 (8th Cir. 1988). In that case there was extensive expert medical testimony that a human bite could cause "serious infection," which the court recognized as a form of "serious bodily harm." 846 F.2d at 1167. That expert testimony led the court to conclude, "Since a human bite has the capacity to inflict serious bodily harm, we hold that the human mouth and teeth are a deadly and dangerous weapon in circumstances like those in the instant case, even if the harm actually inflicted was not severe," and "regardless of the presence or absence of AIDS."Moore, 846 F.2d at 1167, 1168.
In the case before this court, there was absolutely no evidence of the capacity of a human bite to cause the type of serious physical injury defined by § 13A-1-2(9). In Moore, 846 F.2d at 1168, the court also held that "in a legal context the possibility of AIDS transmission by means of a bite is too remote to support a finding that the mouth and teeth may be considered a deadly and dangerous weapon in this respect." In the case under review, the prosecution simply failed to carry its burden of proof of the elements of assault in the first degree. Even the jury rejected the state's theory of attempted murder. Consequently, the defendant's conviction for assault in the first degree is hereby reversed.
However, the state did prove the elements of assault in the third degree and the jury was instructed on those elements. Therefore, with regard to count one of the indictment, this cause is remanded to the circuit court with instructions that the conviction for first degree assault be set aside, and that the defendant be adjudged guilty of assault in the third degree and sentenced accordingly. See Ex parte Stork, 475 So.2d 623,624 (Ala. 1985).
 II
The defendant argues that the use of shackles to secure his feet at trial was an inherently prejudicial practice that a trial court may permit only where justified by an essential state interest. Bringing a prisoner before the bar of justice in handcuffs or shackles, where there is no pretense of necessity, is inconsistent with our notion of a fair trial.Taylor v. State, 372 So.2d 387, 389 (Ala.Cr.App. 1979); McCoyv. State, 503 So.2d 371 (Fla.Dist.Ct.App. 1987). *Page 289 
Though the facts in the present case do not explicitly indicate a fear by the court that the defendant would attempt to escape, it is not reversible error for a trial court to allow a defendant to be brought into the courtroom handcuffed.Gulley v. State, 342 So.2d 1362, 1367 (Ala.Cr.App. 1977); Statev. Vizena, 454 So.2d 1291, 1292 (La.App. 1984). It is in the sound discretion of the trial court to restrain the defendant, and such discretion should not be disturbed, Martin v. State,51 Ala. App. 405, 286 So.2d 80, 85 (1973). "Ultimately, however, it is incumbent upon the defendant to show that less drastic alternatives were available and that the trial judge abused his discretion by not implementing them," Wilson v. McCarthy,770 F.2d 1482, 1486 (9th Cir. 1985).
The trial judge in the instant case acknowledged defense counsel's concern over the defendant's appearance and in response invited suggestions to satisfy counsel's concern. The feasibility of any other form of restraint was absent and the court exercised its judicial discretion. Martin, 286 So.2d at 85.
At the beginning of trial, the judge had every right to believe that the state would be able to prove its case and show that the defendant, a convicted felon, had intentionally tried to spread a deadly and terrible virus by biting another person. Under these circumstances, the trial judge was justified in having the defendant restrained.
 III
Finally, the defendant contends that the state failed to present a prima facie case of assault in the third degree. Count three charged the defendant with the second degree assault of officer Bettina Carter, in violation of Ala. Code 1975, § 13A-6-21. The defendant was found guilty of the lesser included offense of assault in the third degree, in violation of § 13A-6-22, which provides:
 "(a) A person commits the crime of assault in the third degree if:
 "(1) With intent to cause physical injury to another person, he causes physical injury to any person; or
 "(2) He recklessly causes physical injury to another person; or
 "(3) With criminal negligence he causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or
 "(4) With intent to prevent a peace officer from performing a lawful duty, he causes physical injury to any person."
The evidence presented at trial showed that the defendant hit officer Carter with a combination lock during the defendant's struggle with officer Mitchell. Officer Carter was struck over her eye and on the top of her head and required medical attention for the wounds received. There was abundant evidence that the defendant intended to strike officer Mitchell. Under § 13A-6-22, the defendant did not have to intend to cause injury to officer Carter if he intended to cause injury to officer Mitchell and officer Carter was injured as a result of his actions.
It is well settled that the standard this court must apply in determining a defendant's guilt is "whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis of guilt, but whether a jury might reasonably so conclude." Cumbo v. State,368 So.2d 871, 875 (Ala.Cr.App. 1978), cert. denied, Ex parte Cumbo,368 So.2d 877 (Ala. 1979). Legal evidence was presented at trial from which the factfinder could, by fair inference, find that the defendant intended to cause physical injury. The defendant's conviction for assault in the third degree is affirmed.
The defendant's conviction for assault in the first degree on count one of the indictment involving officer Mitchell is reversed. This cause is remanded with the instructions set forth in Part I of this opinion. The convictions for second and third degree assault are affirmed. *Page 290 
AFFIRMED IN PART; REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
TYSON, PATTERSON and McMILLAN, JJ., concur.
TAYLOR, P.J., concurs as to the affirmance in part; dissents as to the reversal in part.