Earl Edward MATHONICAN,
Appellant,

v.

The STATE of Texas, Appellee.

No. 06–05–00056–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 23, 2006.

Decided May 12, 2006.

60

Cynthia Braddy, Sulphur Springs, for appellant.

Carol Day Moss, Asst. Dist. Atty., F. Duncan Thomas, Dist. Atty., Greenville, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

The State charged Earl Edward Mathonican with the crime of sexually assault-

ing J.M. by causing three distinct penile penetrations without J.M.'s consent—J.M. penetrating Mathonican's anus and mouth, and Mathonican penetrating J.M.'s mouth. *See* Tex. Pen.Code Ann. § 22.011 (Vernon Supp.2005). The State also sought and obtained a jury finding that, during the commission of the offenses, Mathonican used or exhibited a deadly weapon, that is, his HIV-positive seminal fluid.[1] After convicting Mathonican, the jury assessed his punishment at ninety-seven years' imprisonment.[2]

On appeal, Mathonican claims the charges were erroneously submitted to the jury disjunctively, violating his right to a unanimous verdict on each charge. He also challenges the sufficiency of the evidence to support the deadly weapon finding. We reverse Mathonican's conviction and remand the cause for a new trial because we hold that (1) the jury charge erroneously allowed a conviction by a potentially less-than-unanimous jury, and that error was egregiously harmful, but that (2) on remand the State may again seek a deadly weapon finding because the evidence was legally sufficient to support that finding.

*(1) The Jury Charge Contained Error Requiring Reversal*

In his first point of error, Mathonican contends the trial court's disjunctive charge to the jury violated his right under the Texas Constitution to a unanimous verdict. *See* Tex. Const. art. I, § 19, art. V, § 13 (composition of civil and criminal ju-

---

**1.** This finding affects when Mathonican will become eligible to be considered for parole. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.2005); Tex. Gov't Code Ann. § 508.145(d) (Vernon Supp.2005).

**2.** During the punishment trial, Mathonican pled "true" to having been previously and finally convicted of a felony offense. This

plea enhanced the applicable punishment range from a second-degree felony, *see* Tex. Pen.Code Ann. § 22.011(f), to a first-degree felony, *see* Tex. Pen.Code Ann. § 12.42(b) (Vernon Supp.2005), *and see* Tex. Pen.Code Ann. § 12.32(a) (Vernon 2003) (first-degree felony punished at imprisonment for five to ninety-nine years, or life).

ries); TEX.CODE CRIM. PROC. ANN. art. 36.29(a) (Vernon Supp.2005) (unanimous jury verdict required in criminal cases). We agree.

■ "The function of the jury charge is to instruct the jury on applying the law to the facts." *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App.1994). "[A]n erroneous or an incomplete jury charge jeopardizes a defendant's right to jury trial because it fails to properly guide the jury in its fact-finding function." *Id.* "An erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction." *Id.* Instead, Article 36.19 of the Texas Code of Criminal Procedure outlines the path this Court should follow to review error in the charge: "[F]irst, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal." *Id.* at 731–32 (citing TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981) and referencing *Gibson v. State,* 726 S.W.2d 129, 132 (Tex.Crim.App.1987)). The subsequent evaluation of whether "sufficient harm" shall be found to require reversal "depends upon whether appellant objected." *Abdnor,* 871 S.W.2d at 732. "Where there has been a timely objection made at trial, an appellate court will search only for 'some harm.'" *Id.* "By contrast, where the error is urged for the first time on appeal, a reviewing court will search for 'egregious harm.'" *Id.* (citing *Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim.App.1986); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g)).

*(a) The Indictment*

**3.** The first count of the indictment included three paragraphs, each paragraph alleging a different charge of aggravated sexual assault.

■ Because a proper jury charge is generally limited to and guided by the language of the indictment, *see, e.g., Brown v. State,* 159 S.W.3d 703, 710 (Tex. App.-Texarkana 2004, pet. denied) (referencing *Curry v. State,* 30 S.W.3d 394, 404 (Tex.Crim.App.2000)), it is essential to first examine the applicable portions of the State's indictment.[3] The indictment's second count contained three paragraphs, which alleged:

AND THE GRAND JURORS AFORESAID do further present in and to said Court that on or about the 26th day of December, 2003, the said Earl Edward Mathonican

Paragraph One

did then and there intentionally and knowingly sexually assault [J.M.], by causing [J.M.'s] sexual organ to penetrate [the] anus of the said Earl Edward Mathonican, without [J.M.'s] consent, and the said Earl Edward Mathonican knew that the said [J.M.] was unconscious and/or physically unable to resist;

Paragraph Two

did then and there intentionally and knowingly sexually assault [J.M.], by causing [J.M.'s] sexual organ to penetrate the mouth of the said Earl Edward Mathonican, without [J.M.'s] consent, and the said Earl Edward Mathonican knew that the said [J.M.] was unaware that the sexual assault was occurring;

Paragraph Three

did then and there intentionally and knowingly sexually assault [J.M.], by causing his sexual organ to penetrate the mouth of the said [J.M.], without [J.M.'s] consent, and the said Earl Ed-

The jury acquitted Mathonican on those charges.

ward Mathonican knew that the said [J.M.] was unaware that the sexual assault was occurring; . . . .

*(b) The Jury Charge*

The trial court's jury charge during the guilt/innocence phase included nine pages of instructions, plus two additional pages of verdict forms. The relevant application paragraphs instructed the jury:

9.

Next consider the offense of sexual assault as set out in Count Two, Paragraph One. If you find from the evidence beyond a reasonable doubt that on or about the 26th day of December, 2003, in Hunt County, Texas, the defendant, Earl Edward Mathonican, did then and there, intentionally or knowingly, sexually assault [J.M.], by causing [J.M.'s] sexual organ to penetrate the anus of the said Earl Edward Mathonican, without [J.M.'s] consent, and the said Earl Edward Mathonican knew that the said [J.M.] was unconscious or physically unable to resist, then you will find the defendant guilty of sexual assault by causing [J.M.'s] sexual organ to penetrate the anus of Earl Edward Mathonican, as charged in Count Two, Paragraph One of the indictment. If the evidence did not convince you beyond a reasonable doubt or you have a reasonable doubt thereof, you will acquit the defendant and say so by your verdict of "not guilty."

10.

Next consider the offense of sexual assault as set out in Count Two, Paragraph Two of the indictment. If you find from the evidence beyond a reasonable doubt that on or about the 26th day of December, 2003, in Hunt County, Texas, the defendant, Earl Edward Mathonican, did then and there, intentional-ly or knowingly, sexually assault [J.M.], by causing [J.M.'s] sexual organ to penetrate the mouth of the said Earl Edward Mathonican, without [J.M.'s] consent, and the said Earl Edward Mathonican knew that the said [J.M.] was unaware that the sexual assault was occurring, then you will find the defendant guilty of sexual assault by causing [J.M.'s] sexual organ to penetrate the mouth of Earl Edward Mathonican, as charged in Count Two, Paragraph Two of the indictment. If the evidence did not convince you beyond a reasonable doubt or you have a reasonable doubt thereof, you will acquit the defendant and say so by your verdict of "not guilty."

11.

Next consider the offense of sexual assault as set out in Count Two, Paragraph Three. If you find from the evidence beyond a reasonable doubt that on or about the 26th day of December, 2003, in Hunt County, Texas, the defendant, Earl Edward Mathonican, did then and there, intentionally or knowingly, sexually assault [J.M.], by causing his sexual organ to penetrate the mouth of the said [J.M.], without [J.M.'s] consent, and the said Earl Edward Mathonican knew that the said [J.M.] was unaware that the sexual assault was occurring, then you will find the defendant guilty of sexual assault by causing his sexual organ to penetrate the mouth of [J.M.], as charged in Count Two, Paragraph Three. If the evidence did not convince you beyond a reasonable doubt or you have a reasonable doubt thereof, you will acquit the defendant and say so by your verdict of "not guilty."

The verdict form regarding the charges of sexual assault, however, did not require the jury to designate the criminal acts

constituting sexual assault of which the jury had found Mathonican guilty:

We, the Jury, find the defendant, Earl Edward Mathonican, "Guilty" of the offense of Sexual Assault as charged in of [sic] the indictment.

 <u>[signed by the presiding juror]</u>

We, the Jury, find the defendant Earl Edward Mathonican, "Not Guilty" of Sexual Assault.

---

*(c) The Disjunctive Jury Charge Was Error*

While the Texas Court of Criminal Appeals and various Texas Courts of Appeals have previously addressed the issue of a potentially nonunanimous verdict, no Texas court has encountered a case presenting precisely the same facts—nor a conviction involving only the sexual assault statute—as we find presented here. But several cases provide guidance.

In *Francis v. State*, 36 S.W.3d 121 (Tex. Crim.App.2000), the State charged the defendant with a single count of indecency with a child. At trial, "[t]he State introduced evidence of four acts of indecency during its case-in-chief, but elected to proceed on only two of those acts." The trial court denied Francis' request for the State to have to elect between the two remaining, different, criminal acts; and the trial court further denied Francis' request that the jury be instructed that the State was required to prove Francis committed *both* the remaining criminal acts. *Id.* at 122.

In analyzing whether the trial court had erred, the Texas Court of Criminal Appeals first distinguished its earlier opinion in *Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim.App.1991): "Unlike the charge in *Kitchens*, however, alternate theories of committing the same offense were not submitted to the jury in this case. Rather, two separate offenses were submitted to the jury in the disjunctive." *Francis*, 36 S.W.3d at 124. "When the appellant requested that the State be asked to elect, the State proceeded on the incident in which the appellant touched the victim's breast and the second incident in which the appellant touched the victim's genitals. These incidents constitute two separate offenses." *Id.* (citing *Vernon v. State*, 841 S.W.2d 407 (Tex.Crim.App.1992)). "Therefore, *Kitchens*, which considered one offense [murder] with varying theories of commission, is distinguishable from this case." *Francis*, 36 S.W.3d at 124. The *Francis* court then concluded, "The breast-touching and the genital touching were two different offenses, and therefore, should not have been charged in the disjunctive. By doing so, it is possible that six members of the jury convicted appellant on the breast-touching offense (while the other six believed he was innocent of the breast-touching) and six members convicted appellant on the genital touching offense (while the other six believed he was innocent of the genital touching)." *Id.* at 125. The *Francis* court then reversed the conviction because the "appellant's trial allowed a conviction on less than an unanimous jury verdict." *Id.*

As in *Francis*, Mathonican's jury charge did not specifically instruct the jury that, to convict Mathonican under any of the charging paragraphs, it must unanimously agree on his guilt under that paragraph. Thus, the analysis presented in *Francis* suggests the trial court erred here, if the sexual assault statute is a conduct-oriented statute, as is the indecency statute which was addressed in *Francis*. We conclude sexual assault is a conduct-oriented offense.

This Court has not previously addressed the issue of whether Texas' sexual assault statute is a conduct-oriented statute (wherein the Legislature has criminalized

very specific conduct of different types, such that engaging in each type of proscribed conduct would constitute an independently prosecutable offense) or whether that statute is a result-oriented statute (which permits the State to characterize multiple paragraphs within the same indictment count as alternative theories of prosecuting the same offense). Nor have the parties directed our attention to any Texas court that has addressed this issue as it relates specifically to Section 22.011 of the Texas Penal Code.

Texas' *aggravated* sexual assault statute, Section 22.021 of the Texas Penal Code, is a conduct-oriented statute proscribing several different types of conduct. *Vick v. State*, 991 S.W.2d 830, 832 (Tex.Crim.App. 1999); *see* TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2005). The *Vick* court noted that the aggravated sexual assault statute "expressly or impliedly separates sections by 'or,' which is some indication that any one of the proscribed conduct provisions constitutes an [independent] offense." *Id.* at 832–33.

Some of our sister courts of appeals, too, have held that Section 22.021 is conduct oriented and spells out several distinct offenses. *Hendrix v. State*, 150 S.W.3d 839, 847–49 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (submitting three offenses of aggravated sexual assault disjunctively possibly permitted jury to convict without unanimity on which of three offenses Hendrix was guilty; egregiously harmful under *Almanza*); *In re M.P.*, 126 S.W.3d 228, 231 (Tex.App.-San Antonio 2003, no pet.) (jury charge and general verdict form allowed the jury to adjudicate juvenile delinquency based on aggravated sexual assault, without unanimity; harmful); *Clear v. State*, 76 S.W.3d 622 (Tex.App.-Corpus Christi 2002, no pet.) (indictment alleged aggravated sexual assault in three ways: using defendant's finger to penetrate victim's sexual organ, using defendant's sexual organ to penetrate victim's sexual organ, and penetrating victim's mouth with defendant's sexual organ; prosecutor argued that six jurors could find defendant guilty of using finger, six others could find defendant guilty of penetrating mouth, but jurors did not have to agree on single option, as long as all agreed defendant did something that was alleged; conviction reversed for lack of unanimity).

But, of course, we are confronted with a different statute, *simple* sexual assault as set out by Section 22.011 of the Texas Penal Code. Comparing the core of the *aggravated* sexual assault statute (that is, looking at the exact conduct sought to be criminalized minus the accompanying "aggravating" elements, such as the use of a date rape drug or a deadly weapon) to the core of the (simple) sexual assault statute, one can see that, except for the way the parts of each section are numbered, the two Penal Code provisions are identical. *Compare* TEX. PEN.CODE ANN. § § 22.011(a), 22.021(a)(1). Absent the aggravating conditions of aggravated sexual assault, the person commits either offense if he or she "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent," TEX. PEN.CODE ANN. §§ 22.011(a)(1)(A), 22.021(a)(1)(A)(i); or "causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent," TEX. PEN.CODE ANN. §§ 22.011(a)(1)(B), 22.021(a)(1)(A)(ii); or "causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor," TEX. PEN.CODE ANN. §§ 22.011(a)(1)(C), 22.021(a)(1)(A)(iii). Accordingly, there is no logical reason to differ from the holding in *Vick* and our sister courts of appeals mentioned above.

■ We therefore hold that Texas' sexual assault statute, Section 22.011 of the Texas Penal Code, is a conduct-oriented statute that prohibits distinct, yet very specific acts, with each act therein proscribed constituting an independent unit of prosecution.[4]

■ Like the situation faced by the Fourth Court of Appeals in *M.P.*, Mathonican's appeal presents an indictment with three different paragraphs of Count Two that allege distinct and separate offenses, not merely alternative theories of committing the same criminal offense. The State prosecuted Mathonican for sexual assault, a conduct-oriented offense. The indictment's second count thus alleged three different crimes: (1) causing J.M.'s sexual organ to penetrate Mathonican's anus, (2) causing J.M.'s sexual organ to penetrate Mathonican's mouth, and (3) causing Mathonican's penis to penetrate J.M.'s mouth. Thus, the trial court's charge should have required independent verdicts on each of these different charges. Instead, the trial court's general verdict form required only a single verdict, without requiring the jury to differentiate among the charges in the indictment's second count. Accordingly, the jury charge contained error by not requiring a unanimous verdict. *Cf. Ngo*, 175 S.W.3d at 748–49.

*(d) The Error Was Egregiously Harmful*

■ Having found error in the trial court's charge, we must next consider whether sufficient harm resulted from that error. In this case, Mathonican did not object to the error in the trial court. Therefore, reversal is required "only if the error is so egregious and created such harm that [appellant] 'has not had a fair and impartial trial. . . .' " *Almanza*, 686 S.W.2d at 171 (quoting Tex.Code Crim. Proc. Ann. art. 36.19). In evaluating harm, we must assay the damage "in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

In this case, the erroneous jury charge enabled the jury to potentially return a nonunanimous verdict as to any particular sexual assault offense charged. We believe this potential for lack of unanimity was heightened by the State's closing argument:

> Now when you go back to the verdict form, if you have found any one of those three paragraphs [regarding the different allegations of aggravated sexual assault]—if you have found that the defendant did those things beyond a reasonable doubt, then you sign the verdict form that says "aggravated sexual assault, guilty." It could be any one of those three paragraphs.

---

4. A number of other offenses have been determined to be conduct oriented. *Juarez v. State*, No. PD–0743–05, —— S.W.3d ——, 2006 WL 709416 (Tex.Crim.App. Mar. 22, 2006) (Tex.Code Crim. Proc. Ann. art. 62.10(a), (b)(1) (now redesignated as Tex.Code Crim. Proc. Ann. art. 62.102 (Vernon Supp.2005)), separate offenses of failure to report); *Ngo v. State*, 175 S.W.3d 738, 744–45 (Tex.Crim.App.2005) (Tex. Pen.Code Ann. § 32.31 (Vernon Supp. 2005), credit card abuse); *Haight v. State*, 137 S.W.3d 48, 50 (Tex.Crim.App.2004) (Tex. Pen. Code Ann. § 39.03 (Vernon 2003), official oppression); *Francis*, 36 S.W.3d 121 (Tex. Pen. Code Ann. § 21.11 (Vernon 2003), indecency with a child); *Ex parte Gonzalez*, 147 S.W.3d 474, 478–79 (Tex.App.-San Antonio 2004, pet. ref'd) (Tex. Pen.Code Ann. § 46.02 (Vernon 2003), unlawfully carrying weapon). *But contrast Finster v. State*, 152 S.W.3d 215 (Tex. App.-Dallas 2004, no pet.) (Tex.Code Crim. Proc Ann. art. 38.03 (Vernon Supp.2005), resisting arrest, transportation, or search, held not conduct oriented).

*You don't have to believe all three of those beyond a reasonable doubt.* You can. You can believe—you can look at them and say, *I believe he was guilty of this. I believe he was guilty of this. And I believe he was guilty of this. Or you can pick I say—I think he was guilty of the first one and not the second one or the third one.* But if you find any one of those paragraphs then it's aggravated sexual assault.

Then in paragraph[s] 9, 10 and 11, *it's the same thing with sexual assault.* It's just alleging that the consent was without his consent because of—he was unaware that it was happening or he was passed out and couldn't physically resist. And that would be on the second page of the verdict form. That's why there's an "or."

(Emphasis added.) In this passage, the State's use of the first person, nominative case pronoun "I" suggests she was figuratively placing herself in the shoes of the individual jurors throughout her argument. Had she been attempting to figuratively place herself in the *collective* shoes of the entire jury, it would have been more reasonable for her to have avoided a first person, singular tense pronoun and opted instead for either the first person plural, nominative case pronoun "we" or used exclusively the second person nominative case pronoun "you." And, for the State to argue the trinity of allegations contained in the indictment's second count as alternative theories of committing the same offense rather than independent crimes further bolsters our analysis. Additionally, at the charge conference (as well as on appeal), the State consistently took the position that the indictment's second count merely alleged alternative theories of the same offense, rather than alleged separate crimes—a position that we now conclude was erroneous as a matter of law.

The record reveals that facts central to the issues before the jury were in dispute. J.M. testified that one of the charged assaults—that J.M.'s penis penetrated Mathonican's mouth—never occurred. And, moreover, the testimony of one of the State's witnesses can be read to suggest that J.M. and Mathonican had a prior sexual relationship, evidence that might cause ·a jury to discount whether any of the alleged assaults truly involved nonconsensual conduct. And certainly, the record in this case shows Mathonican contested the entirety of the State's case regarding whether the sexual encounter involved consensual or nonconsensual acts.

"The Texas Constitution guarantees due course of law and provides that a defendant charged with a felony must be convicted by a unanimous jury." *Hendrix,* 150 S.W.3d at 849. The jury charge in this case enabled the jury to return a nonunanimous guilty verdict in violation of Mathonican's right under the Texas Constitution. That possibility was aggravated by the State's closing argument. Accordingly, after considering the entire jury charge, the state of the evidence (including contested issues and the weight of probative evidence), the arguments of counsel, and all the information relevant to the jury charge error, we must conclude the error caused Mathonican egregious harm. We sustain Mathonican's first point of error.

*(2) On Remand, the State May Again Seek a Deadly Weapon Finding*

 Mathonican's second and third points of error challenge the factual and legal sufficiency of the evidence to support the affirmative finding that Mathonican used or exhibited a deadly weapon during the commission of the sexual assaults. The third count of the indictment alleged Mathonican used his "seminal fluid" as a deadly weapon during the commission of

the offense(s) because Mathonican carries the human immunodeficiency virus (HIV).

Because we reverse Mathonican's conviction and remand for a new trial, that result requires us to address Mathonican's legal sufficiency challenge to the deadly weapon finding. Only if there was legally sufficient evidence that Mathonican, during the offense, used or exhibited a deadly weapon, namely his seminal fluid, may the State, on remand, seek a deadly weapon finding. We conclude the evidence was legally sufficient and that, therefore, the State may, again, seek a deadly weapon finding.

The state of the evidence relevant to this issue can be quickly enumerated. After the alleged offenses, traces of semen from both Mathonican, who was admittedly HIV positive, and J.M. were found on the sheet on Mathonican's bed where the offenses are alleged to have occurred, as well as on a shirt found in Mathonican's living quarters. No evidence expressly showed when the semen deposits were made, and there was some—though conflicting—evidence that some undetailed sexual contact may have occurred between the two before the occasion of the alleged offense. The day after the alleged offense, J.M. presented himself for a rape examination, which revealed no semen on the oral or anal swab specimens he provided. Subsequent tests revealed no HIV antibodies in J.M.'s body.

When we review the legal sufficiency of the evidence to support any particular evidentiary finding, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have made the finding beyond a reasonable doubt. *Drichas v. State,* 175 S.W.3d 795, 798 (Tex.Crim.App. 2005); *Cates v. State,* 102 S.W.3d 735, 738 (Tex.Crim.App.2003) (citing *Jackson v.*

*Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The jury's deadly weapon finding against Mathonican can survive a legal sufficiency challenge only if there is legally sufficient evidence to support findings that (1) Mathonican's seminal fluid meets the statutory definition of a deadly weapon,[5] (2) his seminal fluid was used or exhibited during the alleged offense, and (3) some person was put in actual danger. *See Drichas,* 175 S.W.3d at 798.

██ The presence at the scene of commingled semen deposits from both men, found just after the alleged offense, when added to the evidence of various types of sexual contact between the two of them on this occasion, including penile penetrations by both Mathonican and J.M., provided the jury a sufficient and legitimate basis to find that Mathonican's seminal fluid had been used or exhibited during the sexual contacts in question. While there was some evidence of a possible previous sexual relationship between the two, that evidence was disputed by J.M.'s testimony. Given the conflict in that evidence, the jury was entitled to believe that there had been no prior sexual relationship between the two men and that the semen deposits were made at the time of the alleged offense.

██ The apparent absence of semen on the oral or anal swabs taken from J.M.'s body the day after the alleged offense, and the subsequent lack of HIV antibodies found in his body, do not logically subvert the other evidence. The law does not require that a deadly weapon actually be used against anyone or even that anyone be in a "zone of danger," but merely that a deadly weapon be exhibited or used and that someone be in some danger.

**5.** *See* Tex. Pen.Code Ann. § 1.07(a)(17)(B) (Vernon Supp.2005) ("anything that in the manner of its use or intended use is capable of causing death or serious bodily injury").

As the Texas Court of Criminal Appeals recently stated,

> Objects that are not usually considered dangerous weapons may become so, depending on the manner in which they are used during the commission of an offense. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App.1991). A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex.Crim.App.1992).

*Drichas*, 175 S.W.3d at 798. The same is true of seminal fluid. It may become a deadly weapon that is used or exhibited, if the man producing it is HIV-positive and engages in unprotected sexual contact. *See Najera v. State*, 955 S.W.2d 698, 701 (Tex.App.-Austin 1997, no pet.) (evidence of unprotected sexual intercourse by HIV-positive man, evidence on how HIV is transmitted and the deadly effect of contracting the virus, but without evidence of ejaculation by defendant or age of semen

stain sufficient for finding that penis and seminal fluid were deadly weapons).

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen.Code Ann. § 1.07(a)(17)(B). We believe it has come to be beyond reasonable debate, generally known, and readily determinable by resort to unassailable sources, that seminal fluid from an HIV-positive man is capable of causing death or serious bodily injury to another person when the HIV-positive man engages in unprotected sexual contact.[6] Therefore, that basic truth therefore need not be established at trial by expert testimony.[7]

In recent years, courts have universally recognized as judicially noticeable the fact that seminal fluid produced by an HIV-positive man during unprotected intimate sexual contact can transmit the virus, risking the transmittee contracting AIDS.

Over the past decade, our nation's understanding of possible methods of transmitting the HIV has increased dra-

---

6. "The acquired immunodeficiency syndrome (AIDS) was first recognized in 1981 and has since become a worldwide pandemic. AIDS is caused by the human immunodeficiency virus (HIV)." The Evidence That HIV Causes AIDS, *http://www.niaid. nih.gov/factsheets/ evidhiv.htm.* "HIV transmission can occur when blood, semen (cum), pre-seminal fluid (precum), vaginal fluid, or breast milk from an infected person enters the body of an uninfected person." How Is AIDS Passed from One Person to Another, *http://www.cdc.gov /hiv/ pubs/ faq/faq16.htm.* "There is still no known cure for AIDS." Facts for Life: What You and the People You Care About Need to Know About HIV/AIDS. *http://www.amfar.org /binary-data/AMFAR —PUBLICATION/ download—file/3.pdf.*

7. *See Emerson v. State*, 880 S.W.2d 759, 764–65 (Tex.Crim.App.1994) (judicial notice of sufficiently established scientific facts may be taken even by appellate court); *Jordan v. State*, 130 Tex.Crim. 182, 92 S.W.2d 1024

(1936) ("facts of universal notoriety" need not be proven); *Soto v. State*, 156 S.W.3d 131, 137 (Tex.App.-Fort Worth 2005, pet. ref'd) (deadliness of extended suffocation or drowning); *Holmes v. State*, 135 S.W.3d 178, 189 (Tex.App.-Waco 2004, no pet.) (among common knowledge are laws of thermodynamics and uniqueness of fingerprints and DNA); *see also Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex.1990) (medical malpractice issues within common knowledge of jurors); *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 355 (Tex.1987) (standard of workmanship requiring connecting washing machine drain line needed no expert testimony, because within common knowledge of laymen). *See generally* Tex.R. Evid. 201(b) (to be judicially noticed, fact must be "not subject to reasonable dispute" and either "generally known" in the trial court's territory or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

matically. It is a well-known fact that an infected individual may possibly transmit the HIV through unprotected sexual intercourse with his or her partner. We take judicial notice of the fact that the HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus.

*State v. Keene*, 629 N.W.2d 360, 365 (Iowa 2001) (citations omitted).

The trial court took notice of ["several well-established and scientifically understood facts about AIDS and its transmission" including that "blood, semen, vaginal fluids, and breast milk" can transmit HIV], an action which we affirm.

*Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327, 331 n. 2 (1993).

We take judicial notice of the fact that the HIV virus is a precursor to AIDS, a progressive and inevitability [sic] fatal disease syndrome. We further take judicial notice of the fact that intimate sexual contact whereby blood or semen of an infected person is transferred to an uninfected person is a primary method of spreading the infection.

*People v. Russell*, 158 Ill.2d 23, 196 Ill.Dec. 629, 630 N.E.2d 794, 795 (1994).

All authorities have agreed that the disease is capable of being transmitted through sexual intercourse, is infectious, and is dangerous to the public health.... We agree that the district court could take judicial notice of the seriousness and the potential for transmissibility of the disease AIDS.

*Dunn v. White*, 880 F.2d 1188, 1196 (10th Cir.1989). Also approving judicial notice that unprotected sexual contact with an

HIV-positive person risks transmission of HIV are *State v. Mahan*, 971 S.W.2d 307, 309 (Mo.1998); *Tischler v. Dimenna*, 160 Misc.2d 525, 529–32, 609 N.Y.S.2d 1002 (1994); *State v. Hutchinson*, 135 Ohio App.3d 459, 734 N.E.2d 454, 457 (1999) (extensive discussion: "In discussing the qualities, etiology, epidemiology and methodology of AIDS the court is taking judicial notice of those medical facts which are now considered indisputable.").

In a Colorado case involving a remarkably similar deadly weapon provision—"capable of producing death or serious bodily injury," COLO.REV.STAT. § 18–1–901(3)(e)(IV)—and an HIV-positive defendant, the Colorado Court of Appeals recognized that "the dangers of HIV are widely known." *State v. Shawn*, 107 P.3d 1033, 1035–36 (Colo.App.2004); *see Brock v. State*, 555 So.2d 285 (Ala.Crim.App.1989) (judicial notice taken that AIDS is life-threatening disease and contraction of HIV would be serious physical injury).

Further, J.M. testified to his understanding that unprotected sexual contact involving an HIV-positive person risks transmission of the virus.

We find that the evidence in this case, viewed in a light most favorable to the prosecution, supports a conclusion that a rational trier of fact could have found beyond a reasonable doubt (1) that Mathonican's seminal fluid was capable of causing death or serious bodily injury in the manner of its use or intended use,[8] (2) Mathonican's seminal fluid was used or exhibited during the alleged offenses, and (3) Mathonican thus put J.M. in danger of death or serious bodily injury. The jury could have properly found that the danger to J.M. was real, that is, more than hypothetical. J.M. need not have been in an actual

---

8. Certainly, the jury could have legitimately concluded that Mathonican's "intended use" of his seminal fluid was its being deposited in, on, or near J.M.

zone of danger; it is sufficient that Mathonican's seminal fluid, as used or as intended to be used, was capable of causing death or serious bodily injury to J.M., even without proof that it did so or that it had any probability to do so. *See Drichas,* 175 S.W.3d at 799–800.

The evidence was legally sufficient for a deadly weapon finding. Therefore, the State may, again, seek such a finding when this case is tried on remand.

*Conclusion*

Texas' sexual assault statute is a conduct-oriented offense. The State's indictment alleged, not alternative theories of committing the same offense of sexual assault, but instead alleged three different crimes under the sexual-assault statute. The trial court charged the jury in the disjunctive without requiring the jury to unanimously agree on any single charge of sexual assault. The State's closing argument at trial further exacerbated the error within the jury charge, to the degree that we must conclude Mathonican suffered egregious harm.

Accordingly, we reverse the trial court's judgment and remand the case for a new trial. On remand, the State may, again, seek a deadly weapon finding.

**Concurring & Dissenting Opinion by Justice ROSS.**

In the first section of its opinion, the majority concludes that Texas' sexual-assault statute, TEX. PEN.CODE ANN. § 22.011 (Vernon Supp.2005), is a conduct-oriented statute. The majority also concludes the trial court erred by submitting a charge to the jury that did not require a unanimous verdict, in violation of Mathonican's rights under the Texas Constitution. Because I agree with that analysis and conclusion, I concur with respect to that part of the majority opinion.

I respectfully dissent, however, with regard to the majority's conclusion that the evidence supporting the jury's affirmative finding that Mathonican used or exhibited a deadly weapon is legally sufficient and that the State may, therefore, again seek such a finding on retrial.

The State's indictment alleged that Mathonican used or exhibited his seminal fluid during the commission of the sexual assault and that Mathonican's seminal fluid was a deadly weapon. The jury agreed and made an affirmative deadly weapon finding. Mathonican contends on appeal that the State's evidence on this issue is legally and factually insufficient. That evidence showed Mathonican had the human immunodeficiency virus (HIV), and Mathonican concedes that a mixture of his and J.M.'s DNA was found from semen stains on a sheet and a shirt at the crime scene. I contend this circumstantial evidence is legally insufficient for a number of reasons.

First, there was no proof of how long the stains had been on the sheet and shirt, and the evidence showed possible previous sexual encounters between J.M. and Mathonican. The majority opinion states that J.M. disputed the evidence of a possible previous sexual relationship between the two. J.M. testified under cross-examination, however, that he would not necessarily know if he had had sex with Mathonican before, as they "drank a lot over there." He said that it was a "possibility" and that it "could have happened."

Second, the scientific analysis of the rape kit specimens taken from J.M. less than ten hours after the assaults [9] shows

---

9. The evidence showed that the assaults occurred sometime after 10:00 p.m. on December 25, 2003. J.M. testified that, after the assaults, he was on the street at a pay tele-

that "[n]o spermatozoa, cellular constituents of semen, were detected on the anal, oral, or oral rinse smear slides" and "[a] presumptive test for the presence of semen was negative on the anal, oral, and oral rinse swabs...." Further, medical testing done four days after the assault, and later, confirmed the absence of HIV antibodies in J.M.'s system.

Third, and perhaps most significant, there was no expert medical testimony regarding the transmission of HIV, the virus' characteristics, or what the likely outcome of contracting the virus would be. While the scourge of HIV, the virus that causes Acquired Immune Deficiency Syndrome (AIDS), has been widely publicized, I believe several characteristics of that virus are still outside the realm of the public's common knowledge. For example, despite the best efforts of governmental health agencies and private charitable organizations working in the medical fields, I doubt the general populace understands the various ways the virus can and cannot be transmitted. Nor do I believe it is common knowledge that certain sexual behaviors carry an inherently greater risk of transmitting the virus than do other types of sexual behaviors. J.M., for example, testified in the instant case that he did not know the different ways a person can contract the HIV virus and that he did not believe it could be transferred through the mouth.

Which behaviors are riskier than others? What degree of risk for transmitting HIV did the behaviors (that the jury found Mathonican and J.M. engaged in) present to J.M.? Did the fact that J.M. subsequently tested negative for HIV suggest J.M. had, in fact, not been exposed to Mathonican's seminal fluid? What is the gestation period for the virus, and how long can it take for it to show up? Is it possible that Mathonican could have, without reaching climax during any of the sexual acts, still transmitted (or exhibited) a medically significant amount of the HIV such that a rational fact-finder could conclude Mathonican's seminal fluid was "used or exhibited" as a deadly weapon during the commission of the assault? Is HIV necessarily deadly, or is it possible to live with HIV without the disease developing into AIDS? The jury had no expert medical or scientific testimony to answer these and many other fundamental questions—questions which I believe should be addressed before a jury can rationally conclude seminal fluid containing HIV is necessarily a deadly weapon.

In *Najera v. State*, 955 S.W.2d 698 (Tex.App.-Austin 1997, no pet.), cited by the majority, the Third Court of Appeals affirmed an aggravated sexual assault conviction based on a finding that the defendant used or exhibited HIV-positive seminal fluid during the commission of the offense. In that case, however, the jury heard expert medical testimony from Donna Stanley, the serologist who tested the various blood and semen stains found on the evidence. *Id.* at 700–01. The jury also heard testimony from Robert Kaspar, M.D., an infectious disease specialist and the director of an HIV/AIDS treatment center. *Id.* at 701. Kaspar explained to the jury how HIV can be transmitted, specifically during sexual intercourse. *Id.* He also explained the link between HIV and AIDS, and further testified that AIDS is a disease for which there is no known

phone trying to call for help when the police picked him up and took him to the police station. He was then taken from the police station to Parkland Hospital in Dallas, where the rape kit specimens were taken. The record shows J.M. checked into the hospital December 26 at 7:02 a.m. There was no evidence J.M. showered or otherwise cleaned up before the specimens were taken.

cure. *Id.* And Kaspar testified that "[a]ccording to statistics current at the time of [Najera's] trial in February 1996, ninety-five percent of persons who contract HIV die within twelve years." *Id.* By contrast, none of this expert medical evidence or testimony was offered in Mathonican's trial.

Similarly, in *Weeks v. State*, 834 S.W.2d 559 (Tex.App.-Eastland 1992, pet. ref'd), the Eleventh Court of Appeals affirmed the attempted murder conviction of an HIV-positive inmate who spit on a prison guard in an attempt to infect the guard with HIV. There, as was the case in *Najera*, the jury heard expert medical testimony from a number of experts.

> Mark E. Dowell, M.D., a doctor of infectious diseases at Baylor College of Medicine; Paul Drummond Cameron, Ph.D., Chairman of the Family Research Institute; Albert D. Wells, D.D.S., a dentist employed by the Texas Department of Criminal Justice at the Coffield Prison Unit; and Lorraine Day, M.D., an orthopedic surgeon employed by the University of San Francisco and Chief of the Orthopedic Department at San Francisco General Hospital, testified on behalf of the state. Dr. Dowell, Dr. Cameron, and Dr. Day qualified as experts on HIV.

The witnesses collectively explained to the jury how HIV can be carried in an infected patient's saliva, how the virus can be spread, and the probability of infection through transfer via saliva from an infected person to an uninfected person. *Id.* at 562–65. The appellate court concluded that the State's expert medical evidence was sufficient to support Weeks' conviction. *Id.* at 565. However, unlike the record in *Weeks*, the record now before us reveals no similar quantity or quality of expert medical testimony on HIV, the virus' rate of transmission under facts similar to those alleged to have occurred between J.M. and Mathonican, or the rate at which HIV becomes the deadly disease AIDS.

The majority opinion states that expert testimony was not required in the instant case because courts may take judicial notice "that seminal fluid from an HIV-positive man is capable of causing death or serious bodily injury to another person when the HIV-positive man engages in unprotected sexual contact," citing several cases from various jurisdictions. In none of the cases cited, however, was there a finding made—or required to be made—by the jury which either determined that transmission of HIV or bodily fluids was accomplished in a manner constituting use or exhibition of a deadly weapon. Further, in almost all these cases—the exception being cases decided at the summary judgment or early dismissal phase—some form of expert medical testimony was presented as evidence of how HIV is transmitted or the inherent dangers of such transmission.[10]

Another problem with the majority's judicial notice approach in this case is that

---

10. *Brock v. State*, 555 So.2d 285 (Ala.Crim. App.1989), cited by the majority for the proposition that "judicial notice [was] taken that AIDS is [a] life-threatening disease and contraction of HIV would be serious physical injury," also holds that judicial notice may not be taken that biting is a means by which HIV may be transmitted, in the absence of any evidence in support thereof. The Alabama high court reversed Brock's conviction for first-degree assault, which in that jurisdiction required a showing that the defendant committed the offense, "with intent to cause serious physical injury to any person by means of a deadly weapon or a dangerous instrument." *Id.* at 287, citing ALA.CODE 1975, Sec. 13A–6–20. The State had asserted that, where Brock had AIDS, his use of his mouth to bite a correctional officer constituted use of a deadly weapon. The court disagreed, noting, "[t]he state presented absolute-

there is nothing in the record showing that the trial court took judicial notice of anything. I agree that the trial court has the power to take judicial notice of adjudicative facts, either sua sponte or on motion of either party. TEX.R. EVID. 201. Such notice by the trial court in a criminal case, however, is not binding on the jury. The trial court must instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed by the court. *See* TEX.R. EVID. 201(g).

I do not quibble with the established scientific conclusions regarding the dangers of HIV infection and the nature of its transmission. Perhaps judicial notice of such facts by the trial court, and a corresponding instruction to the jury, would have been appropriate in this case. The problem, however, is that no such judicial notice was requested or taken, and consequently, no instruction was given to the jury.

Citing *Drichas*, 175 S.W.3d at 798, the majority opinion states that the deadly weapon finding in this case required a showing that (1) Mathonican's seminal fluid meets the statutory definition of a deadly weapon, (2) his seminal fluid was used or exhibited during the alleged offense, and (3) some person was put in actual danger. Again, the deadly weapon alleged in this case was Mathonican's seminal fluid. The only evidence of seminal fluid, however, was a medical report show-

ing the presence of semen stains—for an unknown period of time—on a sheet and a shirt. The record is totally devoid of any evidence that the presence of those stains constituted a danger to *anyone*. *See Drichas v. State*, No. 06–04–00002–CR, 2006 WL 193135 (Tex.App.-Texarkana Jan.27, 2006) (not designated for publication).

For these reasons, I respectfully dissent to the majority's conclusion that the evidence supporting the jury's affirmative finding that Mathonican used or exhibited a deadly weapon is legally sufficient. The State should not be permitted, on retrial, from again seeking a deadly weapon finding.[11]

---

ly no evidence as to the nature of AIDS or the manner in which it can be transmitted." *Id.*

11. In *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (cited with approval for application to Texas cases by *Gardner v. State*, 699 S.W.2d 831, 839 (Tex. Crim.App.1985)), the United States Supreme Court held that the Double Jeopardy Clause of the United States Constitution precludes retrying a defendant once an appellate court has concluded that the evidence is legally

insufficient to sustain the trial court's judgment. It follows, then, that, if the evidence is legally insufficient to sustain the jury's verdict regarding a specially submitted issue, then the State should likewise be precluded from retrying that issue on remand. *Cf. Keeton v. State*, 724 S.W.2d 58, 66 (Tex.Crim.App.1987) (Texas Court of Criminal Appeals' finding that evidence insufficient to support one special issue precludes State from seeking death penalty on retrial).