In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00044-CR


______________________________




FRANKY PAUL JOHNSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


Upshur County, Texas


Trial Court No. 14,520




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury found Franky Paul Johnson (the appellant) guilty of intoxication assault. The jury
assessed his punishment at ten years' imprisonment and made an affirmative finding that he used or
exhibited a deadly weapon during the commission of that crime. Johnson now appeals, raising three
specific points of error (and suggesting a fourth). We overrule each and affirm the trial court's
judgment.

Factual Background

 The evidence showed that during the early morning of February 26, 2007, Lonnie Mitchell
was alerted by the loud sound of a vehicle screeching its tires and slinging gravel just outside the
front of his house in the Pritchett community of Upshur County. Mitchell then went outside, saw
a truck make a U-turn in the road, and heard the truck crash just a few moments later. Mitchell did
not personally go to investigate the crash because, as he testified, automobile accidents are not
uncommon in that area of the road and Mitchell's health problems precluded him from walking all
the way out to the accident scene. The next day, Mitchell went to the accident scene (located about
1,200 feet down the road) and found cans and bottles of beer, along with sacks, a headlight, and
broken glass. 

 As it turned out, the truck Mitchell had seen on the road had crashed only moments after he
had seen it. There had been four occupants: the appellant, Jessie Ezell, Melissa Schmidt, and
Rebecca Kutch. Kutch was ejected from the truck during the crash. Ezell and the appellant went
to Ezell's nearby home, got Ezell's truck, returned to the crash scene, and then drove Kutch and
Schmidt to a Gilmer hospital. Kutch was admitted with severe injuries. 

 Trooper Stephen Sutton was dispatched to the hospital by the Upshur County Sheriff's
Department on February 26 regarding a motor vehicle accident that had occurred earlier that morning
in Upshur County. Sutton arrived at the hospital and located the appellant, Ezell, and Schmidt. 
Kutch was being treated by hospital staff. Sutton spoke with the appellant, and Sutton could tell the
appellant had been drinking and had blood on his clothes. The appellant said he and Ezell had just
happened upon Kutch and Schmidt's vehicle, found that the two girls had been hurt in an accident,
and brought both to the hospital. Sutton believed the appellant's story to be incredible.

 Trooper Sutton later spoke with Schmidt, who said the appellant had been driving the vehicle
that was involved in the accident. Schmidt also told Sutton that she, Kutch, Ezell, and the appellant
had been drinking and driving around Upshur County earlier that night. Schmidt said Kutch had
been ejected from the truck as a result of the accident and was injured; Schmidt even added that
Kutch had required assistance in breathing (presumably, in the form of CPR provided by Schmidt). 
Finally, Sutton testified that Kutch's injuries were so significant that when he arrived at the hospital,
the treating physicians had already inserted a breathing tube down her throat. 

 Based on this information, Sutton arrested Johnson for lying to the officer about the
circumstances surrounding the accident. Sutton later asked the appellant to perform several field
sobriety tests; Johnson performed poorly, which caused Sutton to believe Johnson was intoxicated. 
Sutton then arrested the appellant for driving while intoxicated (DWI) and asked him to provide a
blood sample. Johnson refused. Sutton subsequently sought and obtained a search warrant from a
neutral magistrate, had a nurse draw Johnson's blood, and submitted the blood sample for chemical
analysis. The toxicology test results showed the appellant's blood-alcohol level was .144 at the time
the blood was drawn. 

I. State Law Authorized the Blood Draw Despite the Appellant's Refusal To Provide
Consent


 In his first issue, the appellant contends the trial court abused its discretion by admitting the
results of an analysis of his blood (which was drawn shortly following the accident) because "[t]he
affidavit for [the] search warrant in the case at bar fails to establish probable cause in many contexts
and for several reasons." The trial court admitted, over the appellant's objection, the results of the
toxicology analysis of his blood showing his blood-alcohol content was well in excess of the legal
limit. On appeal, the State contends (as it did before the trial court) that a search warrant was not
required in this case and that the trial court did not abuse its discretion by denying the appellant's
suppression motion. 

 We note that the record does not show that either party made a request for findings of fact
and conclusions of law as regards the ruling on the motion to suppress. After a ruling on a motion
to suppress, a nonprevailing party should attempt to get the rationale for the trial court's ruling on
the record, either through a verbal explanation at the hearing or through express findings of fact and
conclusions of law. State v. Ross, 32 S.W.3d 853, 858 (Tex. Crim. App. 2000). Under the ruling
in State v. Cullen, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006), if a request for such findings and
conclusions is made (using Rule 297 of the Texas Rules of Civil Procedure for guidance), then a trial
court must make them; should it fail or refuse to make them, the courts of appeals are to remand the
case for such findings and conclusions, rather than attempt to guess the rationale employed. 

 If the nonprevailing party fails to make the request and a trial court does not enter findings
of fact and conclusions of law of its own accord, the nonprevailing party is not barred from raising
the correctness of an adverse ruling. Id. However, in the absence of such a request and without any
findings or conclusions in the record, we review a trial court's ruling on a motion to suppress under
a bifurcated standard. We must accord almost total deference to the trial court's determination of
historical fact and review de novo the trial court's application of law to those facts. Carmouche v.
State,10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). If the trial court did not make explicit findings of historical facts, we must review the
evidence "in the light most favorable to the trial court's ruling, making the assumption that the trial
court made explicit findings of fact, supported in the record, that buttressed its conclusion." Dunn
v. State, 176 S.W.3d 880, 881-82 (Tex. App.--Fort Worth 2005, no pet.) (analyzing validity of
consent for blood draw in vehicular homicide case). When a trial court does not specify its reason
for denying a motion to suppress evidence, that ruling will be upheld on appeal if it is correct under
any theory of law applicable to the case. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990); Peddicord v. State, 942 S.W.2d 100, 108-10 (Tex. App.--Amarillo 1997, no pet.)
(determining trial court properly denied suppression of blood test results). In this case, the trial court
did not make specific findings of fact, nor did it explicitly state its reasons for denying the appellant's
motion.

 The evidence adduced at trial has been previously summarized and, for the sake of avoiding
redundancy, is not reiterated. The occurrences of the night of the wreck as described above led to
Trooper Sutton causing a sample of Johnson's blood to be taken from him while Johnson was at the
hospital.

 Generally, a person's blood may not be drawn without his consent. Such a procedure
constitutes a "search and seizure" for purposes of the Fourth Amendment, which typically requires
the State to have probable cause before the fruits of such a search may be admissible in a trial against
an accused. Schmerber v. California, 384 U.S. 757, 767 (1966). However, consent is an exception
to the Fourth Amendment's warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219
(1973); Montanez v. State, 195 S.W.3d 101, 105 (Tex. Crim. App. 2006); Cisneros v. State, 165
S.W.3d 853, 856 (Tex. App.--Texarkana 2005, no pet.). 

 Our law provides,

 (b) A peace officer shall require the taking of a specimen of the person's
breath or blood if:

 (1) the officer arrests the person for an offense under Chapter 49,
Penal Code, involving the operation of a motor vehicle or a watercraft;

 (2) the person was the operator of a motor vehicle or a watercraft
involved in an accident that the officer reasonably believes occurred as a
result of the offense;

 (3) at the time of the arrest the officer reasonably believes that as
a direct result of the accident:

 (A) any individual has died or will die; or

 (B) an individual other than the person has suffered
serious bodily injury; and

 (4) the person refuses the officer's request to submit to the taking
of a specimen voluntarily. 


Tex. Transp. Code Ann. § 724.012(b) (Vernon Supp. 2008). This provision is a companion statute
to Section 724.011 of the Texas Transportation Code, which has been characterized as our "implied
consent statute." This implied-consent doctrine embodied by Section 724.011 means that each
person who willfully operates a motor vehicle on the highways and byways of this state impliedly
consents to provide a specimen of his breath or blood if an officer reasonably believes that driver has
caused death or serious bodily injury to another as a result of operating a motor vehicle while
intoxicated. See generally State v. Neesley, 239 S.W.3d 780, 784 (Tex. Crim. App. 2007)
(discussing Tex. Transp. Code Ann. § 724.011 (Vernon 1999), § 724.012); Beeman v. State, 86
S.W.3d 613, 615-16 (Tex. Crim. App. 2002) (discussing how implied-consent statute "gives officers
an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited
circumstances even without a search warrant").

 Trooper Sutton testified that he had arrested the appellant for DWI, that his investigation led
him to reasonably believe Kutch had sustained serious bodily injury as a result of the accident at
issue, and that the appellant had refused to provide a blood sample. Thus, the trial court could have
reasonably determined that the trooper's testimony satisfied the requirements of Section 724.012(b)
and that a warrant was not required before the appellant's blood could be drawn without his express
consent. As this justification would support the trial court's denial of the suppression motion (where
the trial court did not explicitly state the basis of its ruling), and as the sufficiency of the search
warrant's affidavit would become moot, we will not say the trial court abused its discretion by
overruling Johnson's suppression motion. Cf. Dunn, 176 S.W.3d at 883; and see Oles v. State, 993
S.W.2d 103, 106 (Tex. Crim. App. 1999).

II. Factually and Legally Sufficient Evidence Supports the Deadly Weapon Finding

 In his second and third issues, Johnson contends the evidence is factually and legally
insufficient to support an affirmative finding that Johnson used or exhibited a deadly weapon during
the commission of the underlying intoxication assault. The State disagrees. Again, we agree with
the State.

 When reviewing the legal sufficiency of the evidence to support any particular evidentiary
finding, we must view the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have made the finding beyond a reasonable doubt. Drichas v. State,
175 S.W.3d 795, 798 (Tex. Crim. App. 2005); Cates v. State, 102 S.W.3d 735, 738 (Tex. Crim. App.
2003) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). The jury's deadly weapon finding
against Johnson can survive a legal sufficiency challenge only if there is legally sufficient evidence
to support findings that (1) a vehicle can meet the statutory definition of a deadly weapon,
(2) Johnson used or exhibited a vehicle during the alleged offense, and (3) Johnson's operation or
use of that vehicle put some person in actual danger. See Drichas, 175 S.W.3d at 798; Mathonican
v. State, 194 S.W.3d 59, 67-68 (Tex. App.--Texarkana 2006, no pet.).

 When reviewing a case in which a point of appeal questions the factual sufficiency of the
evidence upon which a conviction was based, 

 it is not enough that the appellate court harbor a subjective level of reasonable doubt
to overturn a conviction that is founded on legally sufficient evidence. An appellate
court judge cannot conclude that a conviction is "clearly wrong" or "manifestly
unjust" simply because, on the quantum of evidence admitted, he would have voted
to acquit had he been on the jury. Nor can an appellate court judge declare that a
conflict in the evidence justifies a new trial simply because he disagrees with the
jury's resolution of that conflict. . . . [A]n appellate court must first be able to say,
with some objective basis in the record, that the great weight and preponderance of
the (albeit legally sufficient) evidence contradicts the jury's verdict before it is
justified in exercising its appellate fact jurisdiction to order a new trial. 


Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). 

 With that standard in mind, we take into account that, "Objects that are not usually
considered dangerous weapons may become so, depending on the manner in which they are used
during the commission of an offense." Mathonican, 194 S.W.3d at 69 (citing Thomas v. State, 821
S.W.2d 616, 620 (Tex. Crim. App. 1991)). "A motor vehicle may become a deadly weapon if the
manner of its use is capable of causing death or serious bodily injury." Id. (citing Ex parte
McKithan, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992)). "Specific intent to use a motor vehicle
as a deadly weapon is not required." Drichas, 175 S.W.3d at 798 (citing McCain v. State, 22 S.W.3d
497, 503 (Tex. Crim. App. 2000)); see Walker v. State, 897 S.W.2d 812, 814 (Tex. Crim. App.
1995).

 Mitchell heard the driver of the truck squeal the truck's tires, heard the driver loudly race the
engine, heard gravel being slung, and saw the truck make an abrupt u-turn in the road. Trooper
Sutton testified that Schmidt had told him that the four had been joy-riding and drinking throughout
the night. Schmidt also placed the appellant behind the wheel of the truck at the time of the accident. 
There was no question that the evidence showed Kutch suffered serious bodily injury as a result of
being thrown from the truck during the accident. Thus, we conclude that a jury could have
concluded--beyond a reasonable doubt--that the manner of the appellant's use of the truck (the
reckless driving) was not only capable of causing serious bodily injury or death, but did cause
serious bodily injury to Kutch because the appellant's reckless driving did result in Kutch being
thrown from the truck and seriously injured. Cf. Roberts v. State, 766 S.W.2d 578, 579-80 (Tex.
App.--Austin 1989, no pet.) (pickup truck was deadly weapon where evidence showed reckless
driving not only could have caused, but did cause, death or serious bodily injury to other victims in
accident).

III. Johnson Failed To Challenge His Initial Arrest for Giving a False Report to a Peace
Officer


 In a final aside found only within the summary of the argument portion of his brief, Johnson's
appellate counsel raises the question of whether, at the time of Johnson's arrest for giving a false
report to a peace officer (1) (which formed the basis of Johnson's initial arrest and detention that
subsequently led to the field-sobriety testing which formed the basis of the intoxication assault
charge), the officer had probable cause to arrest Johnson for the alleged false report. Johnson's
appellate counsel concedes this issue was not first raised at trial, then proceeds to characterize this
as an "unassigned" error for us to review. Johnson's appellate counsel does not provide any further
record citation or discussion of this "unassigned" error within the body of the appellant's brief.

 Because Johnson did not raise this issue before the trial court, it has not been preserved for
our review. See Tex. R. App. P. 33.1(a)(1)(A).

III. Appellant Has Not Demonstrated Reversible Error

 The trial court did not err by denying Johnson's motion to suppress the blood-test results. 
Factually and legally sufficient evidence supports the trial court's affirmative finding that Johnson
used or exhibited a deadly weapon (a motor vehicle) during the commission of the underlying
intoxication assault. Johnson failed to preserve for appellate review any issue regarding the propriety
of his initial arrest for giving a false report to a peace officer. Accordingly, we overrule each of
Johnson's appellate issues and affirm the trial court's judgment. (2)


 



 Bailey C. Moseley

 Justice


Date Submitted: November 14, 2008

Date Decided: November 26, 2008


Do Not Publish
1. See Tex. Penal Code Ann. § 37.08(a)(1) (Vernon 2003) (person commits offense if he
makes false statement to peace officer and statement material to criminal investigation).
2. We note that the prayer of the appellant's brief asks that "the judgment and sentence of the
trial court should be reversed and an acquittal ordered, or in the alternative, the case should be
remanded and the Appellant granted a new trial." None of the appellant's issues on appeal would,
even if sustained, result in a finding that the evidence supporting the appellant's conviction was
legally insufficient. As such, the appellant's prayer for a judgment of acquittal is inappropriate.