Jose Fonseca NAJERA, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–96–00189–CR.

Court of Appeals of Texas, Austin.

Nov. 13, 1997.

Carlos Garcia, Austin, for Appellant.

Ronald Earle, District Attorney, Lisa Dotin Stewart, Assistant District Attorney, Austin, for State.

Before CARROLL, C.J., and JONES and KIDD, JJ.

CARROLL, Chief Justice.

A jury found appellant guilty of aggravated sexual assault and indecency with a child. Tex. Penal Code Ann. § 22.021 (West 1994 & Supp.1997) (aggravated sexual assault), § 21.11 (West 1994) (indecency with child).[1] The district court assessed punishment for these offenses at imprisonment for life and for ten years, respectively. We will affirm the judgment of conviction.

In January 1995, appellant lived in Pflugerville with his wife and three children. Also living in appellant's home were two Mexican nationals, sixteen-year-old Maria E. and fifteen-year-old Oscar P. On the morning of January 4, sheriff's deputies were called to the Najera residence. In the yard, they found Maria's badly bruised body. At trial, the jury was told only that Maria died on

1. Amendments to section 22.021 since the commission of the offense are irrelevant to this appeal.

January 4, 1995. The jury was not told the circumstances of her death or that the police had been called to investigate this death.

Appellant was arrested on January 6 and gave a written statement to police that day. This statement, as edited for admission at the guilt stage, read: "I have only had sex with Maria twice, Oscar was present both times. I have known that I was an HIV carrier for seven or eight years. I am giving this statement to Detective Knight because I feel very bad and want to make this right."

Oscar P. testified that on January 1, 1995, appellant took Maria and him to the "apartment," a small outbuilding behind appellant's house containing a mattress and blankets. Appellant told Maria to take off her clothes. She initially refused to do so, but complied after appellant repeated his command. Appellant then removed his clothes and engaged in sexual intercourse with Maria as Oscar watched. Oscar testified that he saw appellant's penis penetrate Maria's vagina, that appellant was not wearing a condom, and that the act of intercourse lasted a "long time." After he finished, appellant asked Oscar if he wanted to have sex with Maria. Oscar understood this to be a command, not a question. Fearing appellant, Oscar also had sexual intercourse with Maria.

Blood and semen stains were found on the blanket and bedspread in the apartment. A microscopic examination of the semen stains disclosed the presence of sperm. The stains were subjected to DNA testing, and the results were compared with the results of DNA tests run on Maria's and appellant's blood. DNA types found in the blood stains matched those found in Maria's blood. DNA types found in the semen stains matched those found in both Maria's and appellant's blood. Donna Stanley, the serologist who conducted the DNA tests, testified that semen stains commonly contain body fluids from the female as well as the male, and that DNA from both persons can be isolated and tested. Stanley testified that only one out of two hundred-fifty Hispanic persons has the particular combination of DNA types found in Maria's blood, and that only one out of ninety-three Hispanics has the combination of DNA types found in appellant's blood.

Appellant's blood also tested positive for HIV.

■ Appellant challenges the legal and factual sufficiency of the evidence with respect to both offenses for which he was convicted. In determining the legal sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991); *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App.1981). When conducting a factual sufficiency review, we do not view the evidence in the light most favorable to the verdict. Instead, we consider all the evidence equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex.App.—Austin 1992, no pet.). We will set aside a verdict for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State* 922 S.W.2d 126, 129 (Tex.Crim.App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd as untimely filed).

■ The first count of the indictment alleged that appellant contacted and penetrated Maria E.'s sexual organ with his penis. Penal Code § 22.021(a)(1)(B)(i), (iii). The aggravating element was alleged to be the "intentional[ ] and knowing[ ] use and exhibit [of] a deadly weapon, to wit: his sexual organ and bodily fluids, that in the manner of its [sic] use and intended use was capable of causing death and serious bodily injury, in the course of the same criminal episode." Section 22.021(a)(2)(A)(iv). Appellant contends the State failed to prove the deadly weapon allegation because there was no evidence that he ejaculated when he engaged in sexual intercourse with Maria, that he was HIV positive on January 1, 1995, or that he knew HIV is capable of causing death

or serious bodily injury or intended that result.[2]

Dr. Robert Kaspar, an infectious disease specialist and director of an HIV/AIDS treatment center, testified that HIV is transmitted by the exchange of bodily fluids, most commonly during sexual intercourse. The virus may be transmitted by a single act of sexual intercourse. Kaspar further testified that HIV causes AIDS, a fatal condition for which there is no known cure. According to statistics current at the time of appellant's trial in February 1996, ninety-five percent of persons who contract HIV die within twelve years. Kaspar answered affirmatively when asked if an HIV positive man's sexual organ and bodily fluids would be capable of causing death or serious bodily injury to another person if the man had unprotected sexual intercourse.

In his written statement, appellant said that he had been HIV positive for seven or eight years. Blood testing confirmed appellant's status as HIV positive. Deputy Paul Knight, one of the investigating officers, testified that appellant told him on the morning of January 4 that he was suffering from pneumonia and was HIV positive. Knight continued, "I asked him if anybody in his house knew.... He said his wife knew but that they had protected each other, and I took that to mean they used some kind of contraceptive or something that would prevent the transmitting of the disease." Oscar testified that he saw appellant's penis penetrate Maria's vagina and that appellant was not wearing a condom. He said the act of intercourse lasted a "long time." Sperm was found in the semen stains, and these stains were linked to appellant and Maria by the DNA tests.

From the evidence summarized above, the jury could rationally conclude beyond a reasonable doubt that appellant was HIV positive on January 1, 1995, that he knew he was HIV positive, that he knew HIV was a fatal disease transmissible by sexual intercourse,

and that he knew how to prevent the transmission of HIV by the use of condoms. The jury could also rationally conclude beyond a reasonable doubt that appellant sexually assaulted Maria on January 1, that he did not wear a condom, that he ejaculated, and that his bodily fluids were commingled with hers. Considering appellant's actions in light of his knowledge, the jury could rationally conclude beyond a reasonable doubt that he intentionally or knowingly used his penis and bodily fluids in a manner capable of causing death to Maria by infecting her with HIV. Point of error four is overruled.

■ Appellant does not refer us to any exculpatory evidence with regard to the deadly weapon issue. He merely notes that Oscar did not testify that he saw appellant ejaculate and that Stanley testified that the age of the semen stains could not be determined. We believe the jury's conclusion that appellant used his penis and bodily fluids as a deadly weapon is not contrary to the great weight and preponderance of the evidence. Point of error three is overruled.

■ The third count of the indictment alleged that appellant intentionally and knowingly exposed his anus and genitals to Oscar P. with the intent to arouse and gratify appellant's sexual desire. Penal Code § 21.11(a)(2). Appellant contends the State failed to prove the requisite intent to arouse or gratify his sexual desire. Appellant offers virtually no argument in support of this contention, noting merely that Oscar did not testify that he "actually touched Appellant's penis to determine its rigidity" and that there was no evidence he "actually was sexually gratified by his actions." The State was not required to prove that appellant was sexually gratified, but only that he acted with the intent to arouse or gratify himself sexually. Applying the appropriate standards of review, we believe the evidence is both legally and factually sufficient to prove such intent and to otherwise sustain appellant's con-

---

2. Anything that in the manner of its use or intended use can be a deadly weapon. Tex. Penal Code Ann. § 1.07(a)(17)(B) (West 1994). This includes parts of the body. *See Powell v. State,* 939 S.W.2d 713, 717 (Tex.App.—El Paso 1997, no pet.) (feet); *Cooper v. State,* 773 S.W.2d 749,

750 (Tex.App.—Corpus Christi 1989, no pet.) (hands). Appellant does not deny that the sexual organ and bodily fluids of a man who is HIV positive are together capable of being used as a deadly weapon.

viction for indecency with a child. Points of error five and six are overruled.

■ In point of error two, appellant complains about remarks made by the prosecutor during her opening statement and closing argument. In concluding her opening statement, the prosecutor told the jury, "You will hear this testimony in this trial in kind of a vacuum. There are things that you're not going to be allowed to hear because—." Appellant objected that it was "wholly improper ... to make such comments on opening statement or during any part of the trial." The objection was overruled and the prosecutor continued, "You're not going to hear everything that you want to hear, but I'll submit to you that the evidence you will hear will prove the state's case to you beyond a reasonable doubt, indeed beyond all doubt." The prosecutor returned to this theme during her closing argument, saying, "And I also want to apologize because this case has been presented to you in somewhat of a vacuum. Please understand we presented to you everything that we believe we can."

■ It is improper for a prosecutor to suggest to the jury that there is inadmissible evidence that, if revealed, would show other improper acts by the defendant or otherwise justify a finding of guilt. *Stearn v. State,* 487 S.W.2d 734, 736 (Tex.Crim.App.1972). Appellant urges that this was precisely what the prosecutor attempted to do in this cause. Appellant voiced no objection to the prosecutor's closing argument, however, waiving any error there. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996). Appellant's objection that the prosecutor's opening statement was "wholly improper" was not sufficiently specific to preserve for review the contention he now makes. Tex.R.App. P. 33.1(a)(1)(A); *and see* former Tex.R.App. P. 52(a). Point of error two is overruled.

■ Finally, appellant contends the district court erred by permitting mention of an extraneous offense. This occurred during the testimony of Deputy Knight, who was asked to describe the procedures he followed when he arrested appellant on January 6. Knight answered, "Well, I invited Mr. Najera to step outside and talk to me at his house.

I told him that he was under arrest, I told him he was under arrest for causing the death ... I told him what he was under arrest for." Outside the jury's hearing, appellant objected, "It's improper insertion of an extraneous offense. He's not on trial for the murder. It's purely prejudicial, and that's not at all probative." The court overruled the objection, ruling that "[i]t's part of the background" and "clearly admissible." No further mention was made of the reason for appellant's arrest.

Appellant argues that in light of the evidence that Maria died on January 4, the jury almost certainly completed Knight's interrupted statement by inferring that appellant was arrested for causing Maria's death. We will assume that this is true. We also note that the fact of Maria's death was admitted without objection and that her death was never described at trial as a homicide.

Appellant confessed to having sexual intercourse with Maria in Oscar's presence. Oscar corroborated this confession through his own testimony. The confession was also corroborated by the analysis of the blood and semen stains found at the crime scene. Given the nature and volume of the evidence of appellant's guilt, and in light of the further fact that the jury knew that Maria was dead, we are satisfied beyond a reasonable doubt that telling the jury the reason for appellant's arrest, if error, did not contribute to his conviction or otherwise affect his substantial rights. Tex.R.App. P. 44.2(b); *see also Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim.App.1989) (applying former Tex.R.App. P. 81(b)(2)). Point of error one is overruled.

The judgment of conviction is affirmed.