In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00056-CR
______________________________


EARL EDWARD MATHONICAN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 22,563


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss
Concurring & Dissenting Opinion by Justice Ross


O P I N I O N

            The State charged Earl Edward Mathonican with the crime of sexually assaulting J. M. by
causing three distinct penile penetrations without J. M.'s consent—J. M. penetrating Mathonican's
anus and mouth, and Mathonican penetrating J. M.'s mouth. See Tex. Pen. Code Ann. § 22.011
(Vernon Supp. 2005). The State also sought and obtained a jury finding that, during the commission
of the offenses, Mathonican used or exhibited a deadly weapon, that is, his HIV-positive seminal
fluid.


 After convicting Mathonican, the jury assessed his punishment at ninety-seven years'
imprisonment.


 
            On appeal, Mathonican claims the charges were erroneously submitted to the jury
disjunctively, violating his right to a unanimous verdict on each charge. He also challenges the
sufficiency of the evidence to support the deadly weapon finding. We reverse Mathonican's
conviction and remand the cause for a new trial because we hold that (1) the jury charge erroneously
allowed a conviction by a potentially less-than-unanimous jury, and that error was egregiously
harmful, but that (2) on remand the State may again seek a deadly weapon finding because the
evidence was legally sufficient to support that finding.
(1)       The Jury Charge Contained Error Requiring Reversal
            In his first point of error, Mathonican contends the trial court's disjunctive charge to the jury
violated his right under the Texas Constitution to a unanimous verdict. See Tex. Const. art. I, § 19,
art. V, § 13 (composition of civil and criminal juries); Tex. Code Crim. Proc. Ann. art. 36.29(a)
(Vernon Supp. 2005) (unanimous jury verdict required in criminal cases). We agree.
            "The function of the jury charge is to instruct the jury on applying the law to the facts." 
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "[A]n erroneous or an incomplete
jury charge jeopardizes a defendant's right to jury trial because it fails to properly guide the jury in
its fact-finding function." Id. "An erroneous or incomplete jury charge, however, does not result
in automatic reversal of a conviction." Id. Instead, Article 36.19 of the Texas Code of Criminal
Procedure outlines the path this Court should follow to review error in the charge: "[F]irst, the court
must determine whether error actually exists in the charge, and second, the court must determine
whether sufficient harm resulted from the error to require reversal." Id. at 731–32 (citing Tex. Code
Crim. Proc. Ann. art. 36.19 (Vernon 1981) and referencing Gibson v. State, 726 S.W.2d 129, 132
(Tex. Crim. App. 1987)). The subsequent evaluation of whether "sufficient harm" shall be found
to require reversal "depends upon whether appellant objected." Abdnor, 871 S.W.2d at 732. "Where
there has been a timely objection made at trial, an appellate court will search only for 'some harm.'" 
Id. "By contrast, where the error is urged for the first time on appeal, a reviewing court will search
for 'egregious harm.'" Id. (citing Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986);
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)).
            (a) The Indictment
            Because a proper jury charge is generally limited to and guided by the language of the
indictment, see, e.g., Brown v. State, 159 S.W.3d 703, 710 (Tex. App.—Texarkana 2004, pet.
denied) (referencing Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)), it is essential to
first examine the applicable portions of the State's indictment.


 The indictment's second count
contained three paragraphs, which alleged:
AND THE GRAND JURORS AFORESAID do further present in and to said Court
that on or about the 26th day of December, 2003, the said Earl Edward Mathonican

Paragraph One
 
did then and there intentionally and knowingly sexually assault [J. M.], by causing
[J. M.'s] sexual organ to penetrate [the] anus of the said Earl Edward Mathonican,
without [J. M.'s] consent, and the said Earl Edward Mathonican knew that the said
[J. M.] was unconscious and/or physically unable to resist;

Paragraph Two
 
did then and there intentionally and knowingly sexually assault [J. M.], by causing
[J. M.'s] sexual organ to penetrate the mouth of the said Earl Edward Mathonican,
without [J. M.'s] consent, and the said Earl Edward Mathonican knew that the said
[J. M.] was unaware that the sexual assault was occurring;

Paragraph Three
 
did then and there intentionally and knowingly sexually assault [J. M.], by causing
his sexual organ to penetrate the mouth of the said [J. M.], without [J. M.'s] consent,
and the said Earl Edward Mathonican knew that the said [J. M.] was unaware that the
sexual assault was occurring; . . . . 

            (b) The Jury Charge
            The trial court's jury charge during the guilt/innocence phase included nine pages of
instructions, plus two additional pages of verdict forms. The relevant application paragraphs
instructed the jury:
9.
 
Next consider the offense of sexual assault as set out in Count Two,
Paragraph One. If you find from the evidence beyond a reasonable doubt that on or
about the 26th day of December, 2003, in Hunt County, Texas, the defendant, Earl
Edward Mathonican, did then and there, intentionally or knowingly, sexually assault
[J. M.], by causing [J. M.'s] sexual organ to penetrate the anus of the said Earl
Edward Mathonican, without [J. M.'s] consent, and the said Earl Edward Mathonican
knew that the said [J. M.] was unconscious or physically unable to resist, then you
will find the defendant guilty of sexual assault by causing [J. M.'s] sexual organ to
penetrate the anus of Earl Edward Mathonican, as charged in Count Two, Paragraph
One of the indictment. If the evidence did not convince you beyond a reasonable
doubt or you have a reasonable doubt thereof, you will acquit the defendant and say
so by your verdict of "not guilty."

10.
 
Next consider the offense of sexual assault as set out in Count Two,
Paragraph Two of the indictment. If you find from the evidence beyond a reasonable
doubt that on or about the 26th day of December, 2003, in Hunt County, Texas, the
defendant, Earl Edward Mathonican, did then and there, intentionally or knowingly,
sexually assault [J. M.], by causing [J. M.'s] sexual organ to penetrate the mouth of
the said Earl Edward Mathonican, without [J. M.'s] consent, and the said Earl Edward
Mathonican knew that the said [J. M.] was unaware that the sexual assault was
occurring,  then  you  will  find  the  defendant  guilty  of  sexual  assault  by  causing
[J. M.'s] sexual organ to penetrate the mouth of Earl Edward Mathonican, as charged
in Count Two, Paragraph Two of the indictment. If the evidence did not convince
you beyond a reasonable doubt or you have a reasonable doubt thereof, you will
acquit the defendant and say so by your verdict of "not guilty."

11.
 
Next consider the offense of sexual assault as set out in Count Two,
Paragraph Three. If you find from the evidence beyond a reasonable doubt that on
or about the 26th day of December, 2003, in Hunt County, Texas, the defendant, Earl
Edward Mathonican, did then and there, intentionally or knowingly, sexually assault
[J. M.], by causing his sexual organ to penetrate the mouth of the said [J. M.],
without [J. M.'s] consent, and the said Earl Edward Mathonican knew that the said
[J. M.] was unaware that the sexual assault was occurring, then you will find the
defendant guilty of sexual assault by causing his sexual organ to penetrate the mouth
of [J. M.], as charged in Count Two, Paragraph Three. If the evidence did not
convince you beyond a reasonable doubt or you have a reasonable doubt thereof, you
will acquit the defendant and say so by your verdict of "not guilty."
 
The verdict form regarding the charges of sexual assault, however, did not require the jury to
designate the criminal acts constituting sexual assault of which the jury had found Mathonican
guilty:
We, the Jury, find the defendant, Earl Edward Mathonican, "Guilty" of the offense
of Sexual Assault as charged in of [sic] the indictment.

                                                                             [signed by the presiding juror] 

We, the Jury, find the defendant Earl Edward Mathonican, "Not Guilty" of Sexual Assault.

                                                                        ____________________________

 
            (c) The Disjunctive Jury Charge Was Error
            While the Texas Court of Criminal Appeals and various Texas Courts of Appeals have
previously addressed the issue of a potentially nonunanimous verdict, no Texas court has
encountered a case presenting precisely the same facts—nor a conviction involving only the sexual
assault statute—as we find presented here. But several cases provide guidance.
            In Francis v. State, 36 S.W.3d 121 (Tex. Crim. App. 2000), the State charged the defendant
with a single count of indecency with a child. At trial, "[t]he State introduced evidence of four acts
of indecency during its case-in-chief, but elected to proceed on only two of those acts." The trial
court denied Francis' request for the State to have to elect between the two remaining, different,
criminal acts; and the trial court further denied Francis' request that the jury be instructed that the
State was required to prove Francis committed both the remaining criminal acts. Id. at 122. 
            In analyzing whether the trial court had erred, the Texas Court of Criminal Appeals first
distinguished its earlier opinion in Kitchens v. State, 823 S.W.2d 256 (Tex. Crim. App. 1991): 
"Unlike the charge in Kitchens, however, alternate theories of committing the same offense were
not submitted to the jury in this case. Rather, two separate offenses were submitted to the jury in
the disjunctive." Francis, 36 S.W.3d at 124. "When the appellant requested that the State be asked
to elect, the State proceeded on the incident in which the appellant touched the victim's breast and
the second incident in which the appellant touched the victim's genitals. These incidents constitute
two separate offenses." Id. (citing Vernon v. State, 841 S.W.2d 407 (Tex. Crim. App. 1992)). 
"Therefore, Kitchens, which considered one offense [murder] with varying theories of commission,
is distinguishable from this case." Francis, 36 S.W.3d at 124. The Francis court then concluded,
"The breast-touching and the genital touching were two different offenses, and therefore, should
not have been charged in the disjunctive. By doing so, it is possible that six members of the jury
convicted appellant on the breast-touching offense (while the other six believed he was innocent
of the breast-touching) and six members convicted appellant on the genital touching offense (while
the other six believed he was innocent of the genital touching)." Id. at 125. The Francis court then
reversed the conviction because the "appellant's trial allowed a conviction on less than an
unanimous jury verdict." Id.
            As in Francis, Mathonican's jury charge did not specifically instruct the jury that, to convict
Mathonican under any of the charging paragraphs, it must unanimously agree on his guilt under that
paragraph. Thus, the analysis presented in Francis suggests the trial court erred here, if the sexual
assault statute is a conduct-oriented statute, as is the indecency statute which was addressed in
Francis. We conclude sexual assault is a conduct-oriented offense.
            This Court has not previously addressed the issue of whether Texas' sexual assault statute
is a conduct-oriented statute (wherein the Legislature has criminalized very specific conduct of
different types, such that engaging in each type of proscribed conduct would constitute an
independently prosecutable offense) or whether that statute is a result-oriented statute (which
permits the State to characterize multiple paragraphs within the same indictment count as alternative
theories of prosecuting the same offense). Nor have the parties directed our attention to any Texas
court that has addressed this issue as it relates specifically to Section 22.011 of the Texas Penal
Code.
            Texas' aggravated sexual assault statute, Section 22.021 of the Texas Penal Code, is a
conduct-oriented statute proscribing several different types of conduct. Vick v. State, 991 S.W.2d
830, 832 (Tex. Crim. App. 1999); see Tex. Pen. Code Ann. § 22.021 (Vernon Supp. 2005). The
Vick court noted that the aggravated sexual assault statute "expressly or impliedly separates sections
by 'or,' which is some indication that any one of the proscribed conduct provisions constitutes an
[independent] offense." Id. at 832–33.
            Some of our sister courts of appeals, too, have held that Section 22.021 is conduct oriented
and spells out several distinct offenses. Hendrix v. State, 150 S.W.3d 839, 847–49 (Tex.
App.—Houston [14th Dist.] 2004, pet. ref'd) (submitting three offenses of aggravated sexual assault
disjunctively possibly permitted jury to convict without unanimity on which of three offenses
Hendrix was guilty; egregiously harmful under Almanza); In re M.P., 126 S.W.3d 228, 231 (Tex.
App.—San Antonio 2003, no pet.) (jury charge and general verdict form allowed the jury to
adjudicate juvenile delinquency based on aggravated sexual assault, without unanimity; harmful);
Clear v. State, 76 S.W.3d 622 (Tex. App.—Corpus Christi 2002, no pet.) (indictment alleged
aggravated sexual assault in three ways: using defendant's finger to penetrate victim's sexual organ,
using defendant's sexual organ to penetrate victim's sexual organ, and penetrating victim's mouth
with defendant's sexual organ; prosecutor argued that six jurors could find defendant guilty of using
finger, six others could find defendant guilty of penetrating mouth, but jurors did not have to agree
on single option, as long as all agreed defendant did something that was alleged; conviction
reversed for lack of unanimity).
            But, of course, we are confronted with a different statute, simple sexual assault as set out
by Section 22.011 of the Texas Penal Code. Comparing the core of the aggravated sexual assault
statute (that is, looking at the exact conduct sought to be criminalized minus the accompanying
"aggravating" elements, such as the use of a date rape drug or a deadly weapon) to the core of the
(simple) sexual assault statute, one can see that, except for the way the parts of each section are
numbered,   the   two   Penal   Code   provisions   are   identical.   Compare   Tex.   Pen.   Code
 Ann. §§ 22.011(a), 22.021(a)(1). Absent the aggravating conditions of aggravated sexual assault,
the person commits either offense if he or she "causes the penetration of the anus or sexual organ
of   another   person   by   any   means,   without   that   person's   consent,"   Tex.   Pen.   Code
Ann.  §§ 22.011(a)(1)(A), 22.021(a)(1)(A)(i); or "causes the penetration of the mouth of another
person  by  the  sexual  organ  of  the  actor,  without  that  person's  consent,"  Tex.  Pen.  Code
Ann. §§ 22.011(a)(1)(B), 22.021(a)(1)(A)(ii); or "causes the sexual organ of another person,
without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another
person, including the actor," Tex. Pen. Code Ann. §§ 22.011(a)(1)(C), 22.021(a)(1)(A)(iii). 
Accordingly, there is no logical reason to differ from the holding in Vick and our sister courts of
appeals mentioned above.
            We therefore hold that Texas' sexual assault statute, Section 22.011 of the Texas Penal
Code, is a conduct-oriented statute that prohibits distinct, yet very specific acts, with each act
therein proscribed constituting an independent unit of prosecution.



            Like the situation faced by the Fourth Court of Appeals in M.P., Mathonican's appeal
presents an indictment with three different paragraphs of Count Two that allege distinct and
separate offenses, not merely alternative theories of committing the same criminal offense. The
State prosecuted Mathonican for sexual assault, a conduct-oriented offense. The indictment's
second count thus alleged three different crimes: (1) causing J. M.'s sexual organ to penetrate
Mathonican's  anus,  (2)  causing  J.  M.'s  sexual  organ  to  penetrate  Mathonican's  mouth,  and
(3) causing Mathonican's penis to penetrate J. M.'s mouth. Thus, the trial court's charge should have
required independent verdicts on each of these different charges. Instead, the trial court's general
verdict form required only a single verdict, without requiring the jury to differentiate among the
charges in the indictment's second count. Accordingly, the jury charge contained error by not
requiring a unanimous verdict. Cf. Ngo, 175 S.W.3d at 748–49.
            (d) The Error Was Egregiously Harmful
            Having found error in the trial court's charge, we must next consider whether sufficient harm
resulted from that error. In this case, Mathonican did not object to the error in the trial court. 
Therefore, reversal is required "only if the error is so egregious and created such harm that
[appellant] 'has not had a fair and impartial trial . . . .'" Almanza, 686 S.W.2d at 171 (quoting Tex.
Code Crim. Proc. Ann. art. 36.19). In evaluating harm, we must assay the damage "in light of the
entire jury charge, the state of the evidence, including contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed by the record of the
trial as a whole." Almanza, 686 S.W.2d at 171.
            In this case, the erroneous jury charge enabled the jury to potentially return a nonunanimous
verdict as to any particular sexual assault offense charged. We believe this potential for lack of
unanimity was heightened by the State's closing argument:
Now when you go back to the verdict form, if you have found any one of
those three paragraphs [regarding the different allegations of aggravated sexual
assault] - - if you have found that the defendant did those things beyond a reasonable
doubt, then you sign the verdict form that says "aggravated sexual assault, guilty." 
It could be any one of those three paragraphs.
You don't have to believe all three of those beyond a reasonable doubt. You
can. You can believe - - you can look at them and say, I believe he was guilty of
this. I believe he was guilty of this. And I believe he was guilty of this. Or you can
pick - - I say - - I think he was guilty of the first one and not the second one or the
third one. But if you find any one of those paragraphs then it's aggravated sexual
assault.
Then in paragraph[s] 9, 10 and 11, it's the same thing with sexual assault. 
It's just alleging that the consent was without his consent because of - - he was
unaware that it was happening or he was passed out and couldn't physically resist. 
And that would be on the second page of the verdict form. That's why there's an
"or."
 
(Emphasis added.) In this passage, the State's use of the first person, nominative case pronoun "I"
suggests she was figuratively placing herself in the shoes of the individual jurors throughout her
argument. Had she been attempting to figuratively place herself in the collective shoes of the entire
jury, it would have been more reasonable for her to have avoided a first person, singular tense
pronoun and opted instead for either the first person plural, nominative case pronoun "we" or used
exclusively the second person nominative case pronoun "you." And, for the State to argue the
trinity of allegations contained in the indictment's second count as alternative theories of
committing the same offense rather than independent crimes further bolsters our analysis. 
Additionally, at the charge conference (as well as on appeal), the State consistently took the position
that the indictment's second count merely alleged alternative theories of the same offense, rather
than alleged separate crimes—a position that we now conclude was erroneous as a matter of law.
            The record reveals that facts central to the issues before the jury were in dispute. J. M.
testified that one of the charged assaults—that J. M.'s penis penetrated Mathonican's mouth—never
occurred. And, moreover, the testimony of one of the State's witnesses can be read to suggest that
J. M. and Mathonican had a prior sexual relationship, evidence that might cause a jury to discount
whether any of the alleged assaults truly involved nonconsensual conduct. And certainly, the record
in this case shows Mathonican contested the entirety of the State's case regarding whether the sexual
encounter involved consensual or nonconsensual acts.
            "The Texas Constitution guarantees due course of law and provides that a defendant charged
with a felony must be convicted by a unanimous jury." Hendrix, 150 S.W.3d at 849. The jury
charge in this case enabled the jury to return a nonunanimous guilty verdict in violation of
Mathonican's right under the Texas Constitution. That possibility was aggravated by the State's
closing argument. Accordingly, after considering the entire jury charge, the state of the evidence
(including contested issues and the weight of probative evidence), the arguments of counsel, and
all the information relevant to the jury charge error, we must conclude the error caused Mathonican
egregious harm. We sustain Mathonican's first point of error.
(2)       On Remand, the State May Again Seek a Deadly Weapon Finding
            Mathonican's second and third points of error challenge the factual and legal sufficiency of
the evidence to support the affirmative finding that Mathonican used or exhibited a deadly weapon
during the commission of the sexual assaults. The third count of the indictment alleged Mathonican
used his "seminal fluid" as a deadly weapon during the commission of the offense(s) because
Mathonican carries the human immunodeficiency virus (HIV). 
            Because we reverse Mathonican's conviction and remand for a new trial, that result requires
us to address Mathonican's legal sufficiency challenge to the deadly weapon finding. Only if there
was legally sufficient evidence that Mathonican, during the offense, used or exhibited a deadly
weapon, namely his seminal fluid, may the State, on remand, seek a deadly weapon finding. We
conclude the evidence was legally sufficient and that, therefore, the State may, again, seek a deadly
weapon finding.
            The state of the evidence relevant to this issue can be quickly enumerated. After the alleged
offenses, traces of semen from both Mathonican, who was admittedly HIV positive, and J. M. were
found on the sheet on Mathonican's bed where the offenses are alleged to have occurred, as well as
on a shirt found in Mathonican's living quarters. No evidence expressly showed when the semen
deposits were made, and there was some—though conflicting—evidence that some undetailed
sexual contact may have occurred between the two before the occasion of the alleged offense. The
day after the alleged offense, J. M. presented himself for a rape examination, which revealed no
semen on the oral or anal swab specimens he provided. Subsequent tests revealed no HIV
antibodies in J. M.'s body. 
            When we review the legal sufficiency of the evidence to support any particular evidentiary
finding, we must view the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have made the finding beyond a reasonable doubt. Drichas v. State,
175 S.W.3d 795, 798 (Tex. Crim. App. 2005); Cates v. State, 102 S.W.3d 735, 738 (Tex. Crim.
App. 2003) (citing Jackson v. Virginia, 443 U.S. 307, 318–19 (1979)). The jury's deadly weapon
finding against Mathonican can survive a legal sufficiency challenge only if there is legally
sufficient evidence to support findings that (1) Mathonican's seminal fluid meets the statutory
definition of a deadly weapon,


 (2) his seminal fluid was used or exhibited during the alleged
offense, and (3) some person was put in actual danger. See Drichas, 175 S.W.3d at 798.
            The presence at the scene of commingled semen deposits from both men, found just after
the alleged offense, when added to the evidence of various types of sexual contact between the two
of them on this occasion, including penile penetrations by both Mathonican and J. M., provided the
jury a sufficient and legitimate basis to find that Mathonican's seminal fluid had been used or
exhibited during the sexual contacts in question. While there was some evidence of a possible
previous sexual relationship between the two, that evidence was disputed by J. M.'s testimony. 
Given the conflict in that evidence, the jury was entitled to believe that there had been no prior
sexual relationship between the two men and that the semen deposits were made at the time of the
alleged offense.
            The apparent absence of semen on the oral or anal swabs taken from J. M.'s body the day
after the alleged offense, and the subsequent lack of HIV antibodies found in his body, do not
logically subvert the other evidence. The law does not require that a deadly weapon actually be
used against anyone or even that anyone be in a "zone of danger," but merely that a deadly weapon
be exhibited or used and that someone be in some danger.
 
 
            As the Texas Court of Criminal Appeals recently stated,
Objects that are not usually considered dangerous weapons may become so,
depending on the manner in which they are used during the commission of an
offense. Thomas v. State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). A motor
vehicle may become a deadly weapon if the manner of its use is capable of causing
death or serious bodily injury. Ex parte McKithan, 838 S.W.2d 560, 561 (Tex.
Crim. App. 1992).
Drichas, 175 S.W.3d at 798. The same is true of seminal fluid. It may become a deadly weapon
that is used or exhibited, if the man producing it is HIV-positive and engages in unprotected sexual
contact. See Najera v. State, 955 S.W.2d 698, 701 (Tex. App.—Austin 1997, no pet.) (evidence
of unprotected sexual intercourse by HIV-positive man, evidence on how HIV is transmitted and
the deadly effect of contracting the virus, but without evidence of ejaculation by defendant or age
of semen stain sufficient for finding that penis and seminal fluid were deadly weapons).
            A deadly weapon is "anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(a)(17)(B). We believe it has
come to be beyond reasonable debate, generally known, and readily determinable by resort to
unassailable sources, that seminal fluid from an HIV-positive man is capable of causing death or
serious bodily injury to another person when the HIV-positive man engages in unprotected sexual
contact.


 Therefore, that basic truth therefore need not be established at trial by expert testimony.



            In recent years, courts have universally recognized as judicially noticeable the fact that
seminal fluid produced by an HIV-positive man during unprotected intimate sexual contact can
transmit the virus, risking the transmittee contracting AIDS.
Over the past decade, our nation's understanding of possible methods of transmitting
the HIV has increased dramatically. It is a well-known fact that an infected
individual may possibly transmit the HIV through unprotected sexual intercourse
with his or her partner. We take judicial notice of the fact that the HIV may be
transmitted through contact with an infected individual's blood, semen or vaginal
fluid, and that sexual intercourse is one of the most common methods of passing the
virus.
State v. Keene, 629 N.W.2d 360, 365 (Iowa 2001) (citations omitted).
 
The trial court took notice of ["several well-established and scientifically understood
facts about AIDS and its transmission" including that "blood, semen, vaginal fluids,
and breast milk" can transmit HIV], an action which we affirm.
Faya v. Almaraz, 620 A.2d 327, 331 n.2 (Md. App. 1993).
 
We take judicial notice of the fact that the HIV virus is a precursor to AIDS, a
progressive and inevitability [sic] fatal disease syndrome. We further take judicial
notice of the fact that intimate sexual contact whereby blood or semen of an infected
person is transferred to an uninfected person is a primary method of spreading the
infection.
People v. Russell, 630 N.E.2d 794, 795 (Ill. 1994).
All authorities have agreed that the disease is capable of being transmitted through
sexual intercourse, is infectious, and is dangerous to the public health . . . . We agree
that the district court could take judicial notice of the seriousness and the potential
for transmissibility of the disease AIDS.
Dunn v. White, 880 F.2d 1188, 1196 (10th Cir. 1989). Also approving judicial notice that
unprotected sexual contact with an HIV-positive person risks transmission of HIV are State v.
Mahan, 971 S.W.2d 307, 309 (Mo. 1998); Tischler v. Dimenna, 160 Misc.2d 525, 529–32 (N.Y.
Misc. 1994); State v. Hutchinson, 734 N.E.2d 454, 457 (Ohio App. 1999) (extensive discussion:
"In discussing the qualities, etiology, epidemiology and methodology of AIDS the court is taking
judicial notice of those medical facts which are now considered indisputable."). 
            In a Colorado case involving a remarkably similar deadly weapon provision—"capable of
producing death or serious bodily injury," Colo. Rev. Stat. § 18-1-901 (3) (e) (IV)—and an HIV-positive defendant, the Colorado Court of Appeals recognized that "the dangers of HIV are widely
known." State v. Shawn, 107 P.3d 1033, 1035–36 (Colo. App. 2004); see Brock v. State, 555 So.2d
285 (Ala. Crim. App. 1989) (judicial notice taken that AIDS is life-threatening disease and
contraction of HIV would be serious physical injury).
            Further, J. M. testified to his understanding that unprotected sexual contact involving an
HIV-positive person risks transmission of the virus.
            We find that the evidence in this case, viewed in a light most favorable to the prosecution,
supports a conclusion that a rational trier of fact could have found beyond a reasonable doubt
(1) that Mathonican's seminal fluid was capable of causing death or serious bodily injury in the
manner of its use or intended use,


 (2) Mathonican's seminal fluid was used or exhibited during the
alleged offenses, and (3) Mathonican thus put J. M. in danger of death or serious bodily injury. The
jury could have properly found that the danger to J. M. was real, that is, more than hypothetical. 
J. M. need not have been in an actual zone of danger; it is sufficient that Mathonican's seminal fluid,
as used or as intended to be used, was capable of causing death or serious bodily injury to J. M.,
even without proof that it did so or that it had any probability to do so. See Drichas, 175 S.W.3d
at 799–800.
            The evidence was legally sufficient for a deadly weapon finding. Therefore, the State may,
again, seek such a finding when this case is tried on remand.
Conclusion
            Texas' sexual assault statute is a conduct-oriented offense. The State's indictment alleged,
not alternative theories of committing the same offense of sexual assault, but instead alleged three
different crimes under the sexual-assault statute. The trial court charged the jury in the disjunctive
without requiring the jury to unanimously agree on any single charge of sexual assault. The State's
closing argument at trial further exacerbated the error within the jury charge, to the degree that we
must conclude Mathonican suffered egregious harm.
            Accordingly, we reverse the trial court's judgment and remand the case for a new trial. On
remand, the State may, again, seek a deadly weapon finding.
 
 
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice
 
 
 
 
CONCURRING IN PART, DISSENTING IN PART
            In the first section of its opinion, the majority concludes that Texas' sexual-assault statute,
Tex. Pen. Code Ann. § 22.011 (Vernon Supp. 2005), is a conduct-oriented statute. The majority
also concludes the trial court erred by submitting a charge to the jury that did not require a
unanimous verdict, in violation of Mathonican's rights under the Texas Constitution. Because I
agree with that analysis and conclusion, I concur with respect to that part of the majority opinion.
            I respectfully dissent, however, with regard to the majority's conclusion that the evidence
supporting the jury's affirmative finding that Mathonican used or exhibited a deadly weapon is
legally sufficient and that the State may, therefore, again seek such a finding on retrial. 
            The State's indictment alleged that Mathonican used or exhibited his seminal fluid during
the commission of the sexual assault and that Mathonican's seminal fluid was a deadly weapon. 
The jury agreed and made an affirmative deadly weapon finding. Mathonican contends on appeal
that the State's evidence on this issue is legally and factually insufficient. That evidence showed 
Mathonican had the human immunodeficiency virus (HIV), and Mathonican concedes that a
mixture of his and J. M.'s DNA was found from semen stains on a sheet and a shirt at the crime
scene. I contend this circumstantial evidence is legally insufficient for a number of reasons.
            First, there was no proof of how long the stains had been on the sheet and shirt, and the
evidence showed possible previous sexual encounters between J. M. and Mathonican. The
majority opinion states that J. M. disputed the evidence of a possible previous sexual relationship
between the two. J. M. testified under cross-examination, however, that he would not necessarily
know if he had had sex with Mathonican before, as they "drank a lot over there." He said that it was
a "possibility" and that it "could have happened." 
            Second, the scientific analysis of the rape kit specimens taken from J. M. less than ten hours
after the assaults


 shows that "[n]o spermatozoa, cellular constituents of semen, were detected on
the anal, oral, or oral rinse smear slides" and "[a] presumptive test for the presence of semen was
negative on the anal, oral, and oral rinse swabs . . . ." Further, medical testing done four days after
the assault, and later, confirmed the absence of HIV antibodies in J. M.'s system.  
            Third, and perhaps most significant, there was no expert medical testimony regarding the
transmission of HIV, the virus' characteristics, or what the likely outcome of contracting the virus
would be. While the scourge of HIV, the virus that causes Acquired Immune Deficiency Syndrome
(AIDS), has been widely publicized, I believe several characteristics of that virus are still outside
the realm of the public's common knowledge. For example, despite the best efforts of governmental
health agencies and private charitable organizations working in the medical fields, I doubt the
general populace understands the various ways the virus can and cannot be transmitted. Nor do I
believe it is common knowledge that certain sexual behaviors carry an inherently greater risk of
transmitting the virus than do other types of sexual behaviors. J. M., for example, testified in the
instant case that he did not know the different ways a person can contract the HIV virus and that he
did not believe it could be transferred through the mouth. 
            Which behaviors are riskier than others? What degree of risk for transmitting HIV did the
behaviors (that the jury found Mathonican and J. M. engaged in) present to J. M.? Did the fact that
J. M. subsequently tested negative for HIV suggest J. M. had, in fact, not been exposed to
Mathonican's seminal fluid? What is the gestation period for the virus, and how long can it take
for it to show up? Is it possible that Mathonican could have, without reaching climax during any
of the sexual acts, still transmitted (or exhibited) a medically significant amount of the HIV such
that a rational fact-finder could conclude Mathonican's seminal fluid was "used or exhibited" as a
deadly weapon during the commission of the assault? Is HIV necessarily deadly, or is it possible
to live with HIV without the disease developing into AIDS? The jury had no expert medical or
scientific testimony to answer these and many other fundamental questions—questions which I
believe should be addressed before a jury can rationally conclude seminal fluid containing HIV is
necessarily a deadly weapon.
            In Najera v. State, 955 S.W.2d 698 (Tex. App.—Austin 1997, no pet.), cited by the majority,
the Third Court of Appeals affirmed an aggravated sexual assault conviction based on a finding that
the defendant used or exhibited HIV-positive seminal fluid during the commission of the offense. 
In that case, however, the jury heard expert medical testimony from Donna Stanley, the serologist
who tested the various blood and semen stains found on the evidence. Id. at 700-01. The jury also
heard testimony from Robert Kaspar, M.D., an infectious disease specialist and the director of an
HIV/AIDS treatment center. Id. at 701. Kaspar explained to the jury how HIV can be transmitted,
specifically during sexual intercourse. Id. He also explained the link between HIV and AIDS, and
further testified that AIDS is a disease for which there is no known cure. Id. And Kaspar testified
that "[a]ccording to statistics current at the time of [Najera's] trial in February 1996, ninety-five
percent of persons who contract HIV die within twelve years." Id. By contrast, none of this expert
medical evidence or testimony was offered in Mathonican's trial.
            Similarly, in Weeks v. State, 834 S.W.2d 559 (Tex. App.—Eastland 1992, pet. ref'd), the
Eleventh Court of Appeals affirmed the attempted murder conviction of an HIV-positive inmate
who spit on a prison guard in an attempt to infect the guard with HIV. There, as was the case in
Najera, the jury heard expert medical testimony from a number of experts. 
Mark E. Dowell, M.D., a doctor of infectious diseases at Baylor College of
Medicine; Paul Drummond Cameron, Ph.D., Chairman of the Family Research
Institute; Albert D. Wells, D.D.S., a dentist employed by the Texas Department of
Criminal Justice at the Coffield Prison Unit; and Lorraine Day, M.D., an orthopedic
surgeon employed by the University of San Francisco and Chief of the Orthopedic
Department  at  San  Francisco  General  Hospital,  testified  on  behalf  of  the state. 
Dr. Dowell, Dr. Cameron, and Dr. Day qualified as experts on HIV.
 
The witnesses collectively explained to the jury how HIV can be carried in an infected patient's
saliva, how the virus can be spread, and the probability of infection through transfer via saliva from
an infected person to an uninfected person. Id. at 562–65. The appellate court concluded that the
State's expert medical evidence was sufficient to support Weeks' conviction. Id. at 565. However,
unlike the record in Weeks, the record now before us reveals no similar quantity or quality of expert
medical testimony on HIV, the virus' rate of transmission under facts similar to those alleged to
have occurred between J. M. and Mathonican, or the rate at which HIV becomes the deadly disease
AIDS. 
            The majority opinion states that expert testimony was not required in the instant case
because courts may take judicial notice "that seminal fluid from an HIV-positive man is capable of
causing death or serious bodily injury to another person when the HIV-positive man engages in
unprotected sexual contact," citing several cases from various jurisdictions. In none of the cases
cited, however, was there a finding made—or required to be made—by the jury which either
determined that transmission of HIV or bodily fluids was accomplished in a manner constituting
use or exhibition of a deadly weapon. Further, in almost all these cases—the exception being cases
decided at the summary judgment or early dismissal phase—some form of expert medical testimony
was presented as evidence of how HIV is transmitted or the inherent dangers of such transmission.


 
           Another problem with the majority's judicial notice approach in this case is that there is
nothing in the record showing that the trial court took judicial notice of anything. I agree that the
trial court has the power to take judicial notice of adjudicative facts, either sua sponte or on motion
of either party. Tex. R. Evid. 201. Such notice by the trial court in a criminal case, however, is not
binding on the jury. The trial court must instruct the jury that it may, but is not required to, accept
as conclusive any fact judicially noticed by the court. See Tex. R. Evid. 201(g). 
            I do not quibble with the established scientific conclusions regarding the dangers of HIV
infection and the nature of its transmission. Perhaps judicial notice of such facts by the trial court,
and a corresponding instruction to the jury, would have been appropriate in this case. The problem,
however, is that no such judicial notice was requested or taken, and consequently, no instruction
was given to the jury.
            Citing Drichas, 175 S.W.3d at 798, the majority opinion states that the deadly weapon
finding in this case required a showing that (1) Mathonican's seminal fluid meets the statutory
definition of a deadly weapon, (2) his seminal fluid was used or exhibited during the alleged
offense, and (3) some person was put in actual danger. Again, the deadly weapon alleged in this
case was Mathonican's seminal fluid. The only evidence of seminal fluid, however, was a medical
report showing the presence of semen stains—for an unknown period of time—on a sheet and a
shirt. The record is totally devoid of any evidence that the presence of those stains constituted a
danger to anyone. See Drichas v. State, No. 06-04-00002-CR, 2006 WL 193135 (Tex.
App.—Texarkana Jan. 27, 2006) (not designated for publication). 
            For these reasons, I respectfully dissent to the majority's conclusion that the evidence
supporting  the  jury's  affirmative  finding  that  Mathonican  used  or  exhibited  a  deadly  weapon 
 
 
 
is legally sufficient. The State should not be permitted, on retrial, from again seeking a deadly
weapon finding.


 
 
 
                                                                        Donald R. Ross
                                                                        Justice
 
Date Submitted:          February 23, 2006
Date Decided:             May 12, 2006
 
Publish